STATE OF NORTH CAROLINA v. VICKIE ANN EARNHARDT AND WILLIAM CARL KELLER

No. 282A82

(Filed 3 November 1982)

1. **Criminal Law § 11— accessory after the fact of voluntary manslaughter—sufficiency of evidence**

   In a prosecution for accessory after the fact of voluntary manslaughter, the trial court properly denied defendant's motion to dismiss at the close of the State's evidence and at the close of all the evidence where the evidence was sufficient to give a reasonable inference that defendant knew exactly what had taken place in that he saw two men fighting with the victim, observed the condition of the victim, and observed that the victim had been left in a dangerous position on the road which led to his death. The evidence also was sufficient to show that defendant rendered assistance to the felons in that he concocted and told a false story to an officer.

2. **Criminal Law § 11— accessory after the fact of voluntary manslaughter—erroneous instructions—prejudicial error**

   In a prosecution for accessory after the fact to voluntary manslaughter where the trial court stated that if defendant "knowing Horne and Lagree or Horne or Lagree *could* have committed the crime of voluntary manslaughter, assisted Horne or Lagree in escaping or attempting to escape detection, arrest or punishment by concocting a story which was not true . . . ," then he should be found guilty, the trial court committed prejudicial error. One item of proof of the crime of accessory after the fact is that the accused *knew* that the

felony had been committed by the person assisted, and "considering all of the circumstances of the case" the error was prejudicial. G.S. 15A-1232.

DEFENDANT William Carl Keller appeals as a matter of right pursuant to G.S. 7A-30(2) (1981) from the decision of the Court of Appeals, 56 N.C. App. 748, 290 S.E. 2d 376 (1982), one judge dissenting, finding no error in the trial before *Walker, Judge,* at the 16 February 1981 Session of Superior Court, ROWAN County. Defendant Keller was tried by a jury and convicted of accessory after the fact of voluntary manslaughter and was given a prison sentence of not less than four nor more than ten years.

We address two issues in this opinion: (1) whether the evidence in this case was sufficient as a matter of law to go to the jury, and (2) whether the trial court correctly instructed the jury on the crime of accessory after the fact of voluntary manslaughter.

*Rufus L. Edmisten, Attorney General, by Elisha H. Bunting, Jr., Assistant Attorney General, for the State.*

*Robert M. Davis for defendant.*

CARLTON, Justice.

I.

The Court of Appeals' majority and dissenting opinions present an extensive recitation of the facts; reference is made to those opinions. 56 N.C. App. 748, 290 S.E. 2d 376 (1982). We present a summary of the facts sufficient to understand the contentions addressed.

Evidence for the State tended to show the following:

On the night of 28 June 1980 Donald Lagree and Walter Horne were drinking wine and beer and smoking marijuana at Horne's house when Linda Basinger, Vickie Earnhardt, and two small children came to Horne's house and asked for assistance with their automobile. After the car was driven to an area with more light, Horne and Lagree were able to get the car "running better." The women then bought Horne and Lagree some more beer and wine and the group went to William Carl Keller's house to drink. Defendant Keller was Linda Basinger's boyfriend. It was

about 11 p.m. when they arrived at Keller's home. One or two hours later, Linda Basinger's husband, Clarence Basinger, knocked on Keller's door and told defendant that he wanted to speak to his wife. Linda Basinger went outside but returned shortly thereafter, stating that her husband had hit her. Earnhardt called the sheriff's department. Defendant then went outside, talked with Clarence Basinger and returned, stating that Clarence Basinger said he was sorry he hit his wife and that he wanted to speak with her again. Linda Basinger went back outside; this time defendant accompanied her. Shortly thereafter, the group heard a scream and went outside. They found that Linda Basinger had been cut on the arm and was bleeding profusely. Clarence Basinger then verbally abused Lagree and Horne; the three men then began fighting. Lagree was carrying a belt, Horne had a pocketknife, and Clarence Basinger had a hawkbill knife. When Clarence Basinger fell to the ground he was kicked and stomped. Clarence Basinger started crawling toward the road. He then began yelling that he was going to get his shotgun.

While Clarence Basinger was lying on the road, Lagree and Horne kicked him and stomped him again. Still conscious, he was left on the highway. During this time, defendant was standing in his yard and apparently did nothing.

Horne and Lagree went back into the house. When they returned with Earnhardt they found Clarence Basinger still conscious and moaning. Horne kicked Clarence Basinger again in the head. Within minutes, two cars, approaching from opposite directions, drove towards Clarence Basinger; the Ford Pinto struck him. The driver stopped and called an ambulance and the sheriff's department.

Lagree, testifying pursuant to a plea bargain, and the driver's younger brother stated that defendant told Horne, Lagree and Earnhardt not to tell everything, just the following story: Clarence Basinger had pulled a knife on his wife, Linda Basinger, and was trying to cut her. Defendant then tried to wrestle away the knife. While doing so, he saw two black men, Horne and Lagree, walking up the road and called to them for help. When Clarence Basinger saw the men coming, he ran, but fell down in the road where he was hit by a car. Lagree stated that defendant rehearsed this story about three times. The in-

vestigating officer testified that defendant told him the same story when he talked to defendant about the incident.

Defendant was convicted of being an accessory after the fact of voluntary manslaughter and was sentenced as indicated above. He appealed to the Court of Appeals and that court found no error. Judge Hedrick dissented, believing that the trial court erred in failing to grant defendant's motions to dismiss. Judge Hedrick believed that the evidence was insufficient to show that defendant knew that Horne or Lagree had placed Clarence Basinger on the road or that he knew that they had assaulted Clarence Basinger while he was on or near the road. Hence, Judge Hedrick believed the evidence was insufficient to show that defendant knew that any manslaughter had been committed by anyone. Judge Hedrick also found error in the trial court's instructions.

We agree with the majority that the evidence was sufficient to survive defendant's motions to dismiss. However, we find error in the trial court's instructions, as discussed below, and order a new trial.

II.

We first determine whether the trial court erred in denying defendant's motion to dismiss at the close of the State's evidence and at the close of all the evidence. We first review the salient principles to be applied when testing the sufficiency of the evidence:

(1) A motion for dismissal under G.S. 15A-1227 (1978) is identical to a motion to dismiss the action, or for judgment as in the case of nonsuit, under G.S. 15-173 (1978) in this respect: both statutes allow counsel to make a motion challenging the sufficiency of the evidence at the close of the State's evidence or at the close of all the evidence. Hence, cases dealing with the sufficiency of the evidence to withstand the latter motion made under the older statute, G.S. 15-173, are applicable when ruling on motions made under the more recent statute, G.S. 15A-1227. *State v. Powell*, 299 N.C. 95, 98, 261 S.E. 2d 114, 117 (1980). See also *State v. Mendez*, 42 N.C. App. 141, 146, 256 S.E. 2d 405, 408 (1979).

(2) When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense in-

cluded therein, and (b) of defendant's being the perpetrator of the offense. If so, the motion to dismiss is properly denied. *State v. Roseman,* 279 N.C. 573, 580, 184 S.E. 2d 289, 294 (1971).

(3) The issue of whether the evidence presented constitutes substantial evidence is a question of law for the court. *State v. Stephens,* 244 N.C. 380, 384, 93 S.E. 2d 431, 433 (1956). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Smith,* 300 N.C. 71, 78-79, 265 S.E. 2d 164, 169 (1980). The terms "more than a scintilla of evidence" and "substantial evidence" are in reality the same and simply mean that the evidence must be existing and real, not just seeming or imaginary. *State v. Powell,* 299 N.C. 95, 99, 261 S.E. 2d 114, 117 (1980). If the evidence is sufficient only to raise a suspicion or conjecture as to either the commission of the offense or the identity of the defendant as the perpetrator of it, the motion to dismiss should be allowed. *State v. Cutler,* 271 N.C. 379, 383, 156 S.E. 2d 679, 682 (1967). This is true even though the suspicion so aroused by the evidence is strong. *State v. Evans,* 279 N.C. 447, 453, 183 S.E. 2d 540, 544 (1971). In *State v. Johnson,* 199 N.C. 429, 154 S.E. 730 (1930), Chief Justice Stacy wrote the classic statement of the sufficiency of the evidence test:

> It is sometimes difficult to distinguish between evidence sufficient to carry a case to the jury, and a mere scintilla, which only raises a suspicion or possibility of the fact in issue. (Citations omitted.) The general rule is that, if there be any evidence tending to prove the fact in issue, or which reasonably conduces to its conclusion as a fairly logical and legitimate deduction, and not merely such as raises a suspicion or conjecture in regard to it, the case should be submitted to the jury.

*Id.* at 431, 154 S.E. 2d at 731.[1] See also *State v. Summitt,* 301 N.C. 591, 596-97, 273 S.E. 2d 425, 428, *cert. denied,* 451 U.S. 970, 101

---

1. In *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed. 2d 560 (1979), the United States Supreme Court stated the constitutional test for determining the sufficiency of the evidence: "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. at 2789, 61 L.Ed. 2d at 573 (emphasis in original). The Court, in announcing in a footnote that the above test was "the constitutional minimum required to enforce the due process right," noted that this test "is not novel." In so

S.Ct. 2048, 68 L.Ed. 2d 349 (1981). The trial court's function is to determine whether the evidence allows a *"reasonable inference"* to be drawn as to the defendant's guilt of the crimes charged. *State v. Thomas,* 296 N.C. 236, 244-45, 250 S.E. 2d 204, 209 (1978) (emphasis added). In so doing the trial court should only be concerned that the evidence is sufficient to get the case to the jury; it should not be concerned with the weight of the evidence. *State v. McNeil,* 280 N.C. 159, 162, 185 S.E. 2d 156, 157 (1971).

(4) In ruling on a motion to dismiss the trial court is to consider the evidence in the light most favorable to the State. *State v. McKinney,* 288 N.C. 113, 117, 215 S.E. 2d 578, 581-82 (1975). In so doing, the State is entitled to every reasonable intendment and every reasonable inference to be drawn from the evidence; contradictions and discrepancies do not warrant dismissal of the case—they are for the jury to resolve. *Id.* The court is to consider all of the evidence actually admitted, whether competent or incompetent, which is favorable to the State. *Id.* The defendant's evidence, unless favorable to the State, is not to be taken into consideration. *State v. Jones,* 280 N.C. 60, 66, 184 S.E. 2d 862, 866 (1971). However, when not in conflict with the State's evidence, it may be used to explain or clarify the evidence offered by the State. *Id.* In ruling on the motion, evidence favorable to the State is to be considered as a whole in determining its sufficiency. *State v. Powell,* 299 N.C. at 99, 261 S.E. 2d at 117 (1980).

---

doing it approved of the test applied in *United States v. Jorgenson,* 451 F. 2d 516, 521 (10th Cir. 1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed. 2d 793 (1972), a test which is comparable to the North Carolina standard: "[W]hether 'considering the evidence in the light most favorable to the government, there is substantial evidence from which a jury might *reasonably find* that an accused is guilty beyond a reasonable doubt,'" 443 U.S. at 319 n. 12, 99 S.Ct. at 2789 n. 12, 61 L.Ed. 2d at 573-74 n. 12 (quoting *United States v. Jorgenson,* 451 F. 2d at 521 (10th Cir. 1971), *cert. denied,* 405 U.S. 922, 92 S.Ct. 959, 30 L.Ed. 2d 793 (1972) (emphasis added by United States Supreme Court)). This standard is no different from the North Carolina rules, articulated above, when read as a whole. In *Jackson,* therefore, the United States Supreme Court has impliedly approved the long-standing rules in North Carolina used to determine the sufficiency of the evidence. *State v. Jones,* 303 N.C. 500, 504-05, 279 S.E. 2d 835, 838 (1981).

Moreover, it is no longer the rule in this jurisdiction that the trial court is required to determine that the evidence excludes every reasonable hypothesis of innocence before denying a defendant's motion to dismiss. *State v. Burton,* 272 N.C. 687, 689-90, 158 S.E. 2d 883, 885-86 (1968); *State v. Stephens,* 244 N.C. 380, 383-84, 93 S.E. 2d 431, 433 (1956).

(5) The test of the sufficiency of the evidence to withstand the motion to dismiss is the same whether the evidence is direct, circumstantial or both. See *State v. Powell,* 299 N.C. at 99, 261 S.E. 2d at 117 (1980).

[1] We apply the foregoing principles for testing the sufficiency of the evidence to defendant's conviction of accessory after the fact of voluntary manslaughter. In order to prove a person was an accessory after the fact under G.S. 14-7 (1981) three essential elements must be shown: (1) a felony was committed; (2) the accused knew that the person he received, relieved or assisted was the person who committed the felony; and (3) the accused rendered assistance to the felon personally. *State v. Squire,* 292 N.C. 494, 505, 234 S.E. 2d 563, 569, *cert. denied,* 434 U.S. 998, 98 S.Ct. 638, 54 L.Ed. 2d 493 (1977); *State v. Potter,* 221 N.C. 153, 156, 19 S.E. 2d 257, 259 (1942). Defendant contends that the State failed to present sufficient evidence concerning the second and third elements of the crime. He contends first that the evidence is insufficient to show that he knew that Horne or Lagree had committed the felony of manslaughter. We agree with the Court of Appeals that it makes no difference that defendant may not have actually seen the victim, Clarence Basinger, on the road before the automobile struck him. The testimony clearly indicated that before proposing the false story to be told to the authorities defendant knew that Clarence Basinger had fought with Horne and Lagree and had been left either on the road or very near to it. Indeed, when Horne kicked the victim the last time, leaving him on the road, the evidence indicated that defendant was either standing in his yard or on his porch; Lagree testified specifically that defendant stopped Linda Basinger from going out to see her husband who was lying on the road. Finally, the evidence also indicated that defendant knew the victim had been struck and killed by an automobile before he concocted his story.

It is certainly possible, as the State notes, that defendant did not see the victim lying on the road just before the automobile struck him. The totality of the evidence, however, is such to give rise to a *reasonable inference* that defendant knew precisely what had taken place. The evidence clearly indicated that defendant saw the fighting, the people involved, the condition of the victim, and the very dangerous position of the victim which led to his death. The evidence indicated that defendant knew the victim

was dead, lying on the road, after the automobile struck him. As Chief Judge Morris noted in the Court of Appeals' opinion, the evidence "shows that defendant knew a felony had been committed by Horne or Lagree before he concocted the tale, engineered cooperation among those present, and related the story to Deputy Douglas." 56 N.C. App. at 752, 290 S.E. 2d at 379. Indeed, the act of concocting a tale gives rise to the *reasonable inference* that defendant knew of the felony Horne and Lagree had committed.

Defendant also contends that the evidence was not sufficient to establish that he rendered assistance to the felons. He contends that the evidence shows he acted out of fear of Lagree and Horne and not with the intent to aid them. Defendant's contention is strained and clearly without merit. Defendant told the false story to the officer when Lagree and Horne were not present, a time when he would have no reason to fear for his safety. Taking the evidence in the light most favorable to the State, we find nothing to indicate that defendant acted out of fear for his own safety.

We affirm that portion of the Court of Appeals' opinion finding no error in the trial court's denial of defendant's motion to dismiss.

### III.

Defendant next contends that the trial court erred in allowing the district attorney to state in his closing argument that those present at defendant's house "were acting like a pack of wolves." We find it unnecessary to discuss this contention. We affirm that portion of the Court of Appeals' opinion finding no error in the district attorney's closing argument and agree with the reasoning given for it. 56 N.C. App. at 752, 290 S.E. 2d at 379.

### IV.

[2] Finally, we address defendant's contention that the trial court erred in its instructions to the jury. Indeed, we find error prejudicial to the defendant in one portion of the trial court's instructions.

As noted above, one item of proof for the crime of accessory after the fact is that the accused *knew* that the felony had been committed by the person assisted. In its charge to the jury, the

trial court stated that if defendant, "knowing Horne and Lagree or Horne or Lagree *could* have committed the crime of voluntary manslaughter, assisted Horne or Lagree in escaping or attempting to escape detection, arrest or punishment by concocting a story which was not true . . . ," then he should be found guilty. The Court of Appeals agreed with defendant's contention that this portion of the trial court's instructions represented a misstatement of the law but held that the instructions were not improper when read as a whole. 56 N.C. App. at 754, 290 S.E. 2d at 380.

We must disagree. G.S. 15A-1232 (1978) specifically requires that, "[i]n instructing the jury, the judge *must* declare and explain the law arising on the evidence." (Emphasis added.) This statute declares the rule well established in this jurisdiction that the trial judge must charge the essential elements of the offense and that when he undertakes to define the law, he must state it correctly. If he does not, it is prejudicial error sufficient to warrant a new trial. *State v. Hairr,* 244 N.C. 506, 509, 94 S.E. 2d 472, 474 (1956).

Clearly, the trial court's instructions violated the rule stated above. We can understand the Court of Appeals' reluctance to order a new trial on the basis of this single error. However, we agree with Judge Hedrick's comment in dissent that "considering all of the circumstances of the case" the error was "too prejudicial to be hidden by the familiar rule that the charge must be considered contextually as a whole. . . ." 56 N.C. App. at 758, 290 S.E. 2d at 383. Whether defendant actually knew that the others had committed the felony was an essential element of the offense for which defendant was tried, and, thus, there must be no confusion in the jurors' minds as to the definition of the element. In light of the questions raised and discussed in Section II of this opinion concerning the sufficiency of the evidence on this element—that is, whether defendant actually knew that Horne and Lagree had committed the felony—we find it absolutely crucial that this element of the crime with which defendant was charged be correctly explained to the jurors.

We hasten to note that under a recent amendment to Rule 10(b)(2) of the North Carolina Rules of Appellate Procedure, 303 N.C. 713, 716-17 (1981) (amending 287 N.C. 669, 699 (1975) ), defendant is able to assign this error only because his trial was held

before the change in the rule took effect. Rule 10(b)(2) now requires in pertinent part that, "[n]o party may assign as error any portion of the jury charge or omission therefrom unless he objects thereto before the jury retires to consider its verdict, stating distinctly that to which he objects and the grounds of his objection. . . ." The amendment, which this Court adopted on 10 June 1981, is applicable to all cases tried on or after 1 October 1981. The record discloses that defendant's trial was conducted during the 16 February 1981 Session of Superior Court, Rowan County. Hence, the rule is not applicable to defendant's trial.

Having found error in the portion of the trial court's instructions discussed above, it is unnecessary for us to discuss other challenges to the instructions. Such errors, if any, are not likely to recur on retrial.

In summary, we agree with the Court of Appeals that the trial court properly denied defendant's motions to dismiss and we agree with that court that the district attorney's comments on closing arguments were not improper. However, for the reasons stated above, we find error in the trial court's instructions to the jury; a new trial must be ordered. Accordingly, the decision of the Court of Appeals is reversed and a new trial is ordered.

Reversed.