STATE OF NORTH CAROLINA v. BONNIE DAIL WHITE

No. 841SC735

(Filed 7 May 1985)

1. **Arson § 4.1— procuring burning of house—interests of others—showing of wantonness**

    In a prosecution for wantonly procuring the burning of, and conspiracy to burn, an uninhabited house, evidence that defendant's sister and her husband had an interest in the house, that defendant had the house burned to solve a problem of divided ownership, and that a bank had a security interest in the house was sufficient to permit the jury to find that defendant conspired to burn and procure the burning of the house wantonly in that she did so in conscious disregard of and indifference to the rights of her sister, her sister's husband and the bank.

2. **Arson § 3; Criminal Law § 80.1— wantonly procuring burning of property—copy of deed of trust—authenticity—relevancy**

    In a prosecution for wantonly procuring the burning of, and conspiracy to burn, an uninhabited house, the authenticity of a copy of a deed of trust was sufficiently established for its admission into evidence when defendant identified an exhibit as the deed of trust she and her husband signed in which they pledged the house as security for a bank loan. Moreover, the deed of trust

was relevant to show the interest of the bank in the burned property and thus to prove that defendant acted wantonly in procuring the burning.

APPEAL by defendant from *Phillips, Herbert O., III, Judge.* Judgments entered 9 December 1983 in Superior Court, PERQUIMANS County. Heard in the Court of Appeals 6 March 1985.

Defendant was convicted of unlawfully, willfully, and wantonly procuring the burning of an uninhabited house in violation of G.S. 14-62 and of conspiracy to unlawfully, willfully, and wantonly burn an uninhabited house. She was sentenced to imprisonment for less than the presumptive terms, the sentences to run concurrently. Defendant timely filed a motion for appropriate relief pursuant to G.S. 15A-1401, *et seq.*, in which she sought to have the convictions set aside or, in the alternative, a new trial. The motion was denied. From the judgments entered and the order denying her motion for appropriate relief, defendant appeals.

*Attorney General Edmisten, by Assistant Attorney General Charles H. Hobgood, for the State.*

*Trimpi, Thompson and Nash, by Thomas P. Nash, IV, and John G. Trimpi, for defendant appellant.*

WHICHARD, Judge.

[1] Defendant contends the court erred in denying her motion to dismiss and her motion for appropriate relief. She argues that insufficient evidence was presented to show that she wantonly procured the burning of, or conspired to burn, the house.

In determining the sufficiency of the evidence to take the case to the jury, the evidence must be viewed in the light most favorable to the State. *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E. 2d 649, 652 (1982). So viewed, the evidence here tends to show the following:

The house which was burned was located primarily on land owned by defendant and her husband. The property had been deeded to them by defendant's father when he divided his property among his children. Defendant's sister and her husband were deeded an adjoining tract of land. The boundary line between the tract owned by defendant and that owned by her sister ran through the house, so that approximately four feet of the house

frontage was on the land owned by defendant's sister. Prior to the fire, defendant and her husband, along with four other persons, executed a deed of trust in favor of the Bank of North Carolina in which they pledged the property given them by defendant's father, as well as other property, as security for a loan in the amount of $250,000. Defendant admitted that the bank had an interest in the house because of this deed of trust. The house was used as rental property but was uninhabited at the time of the fire. Defendant and her husband maintained insurance on the house and collected $20,000 under the insurance policy because of the fire loss.

In August 1982 defendant asked Larry Sanders, a co-employee, to burn the house for her in exchange for ten percent of the $20,000 insurance proceeds. Sanders testified that defendant told him she wanted the house burned because "the house set two foot on her—I believe she told me her sister's land. The farm had been split up at her parents' death is the way I understood it, and she was having some kind of problems there." Defendant showed Sanders where the house was located and told him she wanted it completely burned down. Defendant's employer, Luckie Cartwright, who owed defendant some money, agreed to help Sanders burn the house. Defendant, Sanders, and Cartwright discussed the details of burning the house and agreed that the best time to burn it would be on a night when defendant was out of town so she would have an alibi.

On 12 August 1982 defendant told Sanders she was going out of town and she wanted him to make sure he did a good job. That night Sanders and Cartwright set fire to defendant's house. A passerby saw the fire and notified the fire department, which extinguished the fire. After the firemen left, the fire restarted and the house burned down completely. The next day defendant indicated to Sanders and Cartwright that she was pleased with the burning.

Defendant concedes that sufficient evidence was presented to warrant a jury finding that she procured the burning of her house and that she did so for an unlawful purpose, viz, to defraud the insurance company. She argues, however, that no evidence was presented which showed that she did so wantonly, citing *State v. Brackett*, 306 N.C. 138, 291 S.E. 2d 660 (1982). In *Brackett* the de-

fendant was indicted and convicted of willfully and wantonly burning her house in violation of G.S. 14-65. She was not charged with burning for a fraudulent purpose. The defendant argued that the State did not present sufficient evidence of willfulness and wantonness to support the conviction. In addressing the issue presented, the Supreme Court noted the following definitions of "wilful" and "wanton":

> Ordinarily, " '[w]ilful' as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law." *State v. Arnold*, 264 N.C. 348, 141 S.E. 2d 473 (1965). "Wantonness . . . connotes intentional wrong-doing . . . . Conduct is wanton when in conscious and intentional disregard of and indifference to the rights and safety of others." *Hinson v. Dawson*, 244 N.C. 23, 28, 92 S.E. 2d 393, 396-97 (1956).

*State v. Brackett*, 306 N.C. at 142, 291 S.E. 2d at 662. The Court concluded:

> Thus, for a burning of a dwelling to be criminal under G.S. 14-65 as a willful and wanton burning, it must be shown to have been done intentionally, without legal excuse or justification, and with the knowledge that the act will endanger the rights or safety of others or with reasonable grounds to believe that the rights or safety of others may be endangered.

*Id.*

The Court found that although the evidence tended to show that the defendant set fire to her house for the fraudulent purpose of collecting insurance proceeds worth more than her house, this intent was not wanton. *State v. Brackett*, 306 N.C. at 143, 291 S.E. 2d at 663. Since no other evidence was presented to show that the defendant acted willfully and wantonly in burning the house, the Court reversed the conviction. *Id.*

We find *Brackett* distinguishable from this case. The evidence there did not show that a third party had an interest in the property which was burned or that the defendant burned the house to solve a problem of divided ownership. Here, however, the evidence shows that defendant's sister and her husband had

an interest in the house which was burned because part of it was located on their real property. Real property includes not only the face of the earth but also everything under or over it, whether put there by nature, such as trees and grass, or by people, such as houses and other buildings. J. Webster, *Real Estate Law in North Carolina* Sec. 313, at 377-78 (1971). The evidence further shows that the Bank of North Carolina had an interest in the house because it had been pledged as security for a loan, as defendant admits. Defendant was aware of these interests but nevertheless proceeded to procure the burning. In fact, the evidence tends to show that defendant procured the burning because of the interest of her sister and her sister's husband and because problems had arisen in connection with their interest in the house. We conclude that the evidence was sufficient to permit the jury to find that defendant conspired to burn and procured the burning of the house in conscious and intentional disregard of and indifference to the rights of her sister, her sister's husband, and the bank, and thus that she did so wantonly. Accordingly, we find no error in the denial of defendant's motion to dismiss and motion for appropriate relief.

[2] Defendant contends the court erred in admitting into evidence a copy of the deed of trust she and her husband executed in which they pledged the house in question as part of the security for a loan. She argues that the authenticity of the copy was never established, that the deed of trust was not relevant to the issues presented, and that its admission constituted prejudicial error. We find this contention meritless. Defendant identified the exhibit as the deed of trust she and her husband signed, in which they pledged the property in question as security. They thereby sufficiently established its authenticity. *See* 2 H. Brandis, *North Carolina Evidence* Sec. 195, at 119-21 (rev. 2d ed. 1982). The deed of trust was clearly relevant to show the interest of the bank in the burned property and thus to prove that defendant acted wantonly in procuring the burning. Assuming, *arguendo*, that it was error to admit the copy of the deed of trust, we find the error clearly harmless.

No error.

Judges WELLS and BECTON concur.