STATE OF NORTH CAROLINA v. ANTHONY DEWAYNE McCONICO

No. COA01-1562

(Filed 5 November 2002)

## 1. Evidence— hearsay—prior crimes or bad acts—forcible robbery—credibility

The trial court did not err in a robbery with a dangerous weapon case by allowing the State to question under N.C.G.S. § 8C-1, Rule 806 a defense witness on cross-examination as to defendant's prior conviction for forcible robbery after the witness stated that defendant said he was "going to the studio" to assist in establishing an alibi for defendant on the evening of the pertinent crime, because: (1) once defendant's statement was admitted into evidence through the testimony of the witness, the State was allowed to attack defendant's credibility the same as if defendant had testified in court; and (2) N.C.G.S. § 8C-1, Rule 609(a) states that evidence of this type shall be admitted to attack the credibility of a witness, and no balancing is required prior to admission of this evidence for impeachment purposes when the conviction is less than ten years old.

## 2. Robbery— dangerous weapon—motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charges of robbery with a dangerous weapon, because the State presented substantial evidence: (1) that defendant was the man who unlawfully took the victims' personal property; (2) that a dangerous weapon was used in the robbery and that the lives of the victims were threatened; and (3) of the remaining elements of robbery with a dangerous weapon.

STATE v. McCONICO

[153 N.C. App. 723 (2002)]

**3. Sentencing— presumptive range—finding of mitigating factors not required**

The trial court did not err in a robbery with a dangerous weapon case by failing to find any mitigating factors during sentencing because the court did not depart from the presumptive range when it sentenced defendant.

Appeal by defendant from judgments entered 27 April 2001 by Judge D. Jack Hooks, Jr. in Cumberland County Superior Court. Heard in the Court of Appeals 18 September 2002.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General Victoria L. Voight, for the State.*

*A. Michelle FormyDuval for defendant-appellant.*

HUNTER, Judge.

Anthony Dewayne McConico ("defendant") appeals from conviction and sentencing on two counts of robbery with a dangerous weapon, felonies under Section 14-87 of the North Carolina General Statutes. For the reasons stated herein, we conclude the trial court did not err.

The State's evidence tended to show that two individuals were robbed at gunpoint by the same person on 1 and 2 August of 2000. On the night of 1 August 2000, Manuel Ventura ("Ventura") was at a car wash when he was approached by a man with a gun. Ventura described the robber as dark-skinned, approximately 6'1" tall, slim, and approximately 150 pounds; he was wearing a red T-shirt and dark pants. The robber pointed the gun at Ventura and ordered him to a less visible location where he took Ventura's wallet and money, totaling approximately $300.00. Ventura's new Nokia cell phone was also stolen. Thereafter, Ventura drove to the police station to report the incident, speaking with Officers Christine Thomas and Randal Scott Bartay ("Officer Bartay").

In the early morning hours of 2 August 2000, Carlos Falcon ("Falcon") was on a gas station pay phone, when a man pulled up next to him in a dirty beige, older model car with a dealer license plate. The man exited the car and put a gun to the back of Falcon's neck before Falcon could get a good look at his face. However, Falcon did notice that the robber was approximately six feet tall, slim, and wearing a red T-shirt and dark jeans.

Falcon was forced to walk to the edge of a nearby wooded area and get down on his hands and knees. Once on the ground, Falcon was told to empty his pockets, producing $15.00. Falcon and the robber then returned to Falcon's car, and Falcon retrieved his wallet from the console. As they walked back towards the woods again, Falcon turned and attempted to grab the gun. Falcon missed the gun, but he got away and ran to the street, diving into a car that had stopped in the middle of the street. Coincidently, the driver of the car was Officer Bartay.

Officer Bartay proceeded to follow the robber's car. He was later joined by several marked police cars. The robber finally stopped his car in a field, jumped a fence, and fled through the woods. However, before he got away, Officer Bartay was able to discern that the man was a black male, approximately 6'1" tall, with a slender build; he was wearing a red T-shirt and dark pants.

A search was conducted of the car the robber left behind. During the search, a small caliber bullet and a Nokia cell phone were found. It was later determined, by matching serial numbers, that the cell phone was the one taken from Ventura's car earlier that evening. The robber's car was also dusted for fingerprints and, of the identifiable prints, all but one set matched defendant's prints. At approximately 6:30 a.m. on 2 August 2000, Annaliese Valentien ("Valentien") reported her car stolen, the same car the robber had been driving. Valentien had last seen her car the night before, after her boyfriend had dropped the car off at her home. Valentien described her boyfriend, defendant, as approximately 6'1" tall, with a slim build. She had last seen him wearing a red T-shirt and jeans.

On 4 August 2000, Ventura was shown a picture line-up of men matching the description he had given the officers on 1 August 2000. From those pictures, Ventura identified defendant as the man who robbed him.

Several witnesses testified on defendant's behalf at trial, all of whom supplied him with an alibi during the time of the robberies. One such witness, Valentien, testified that defendant had dropped off her car at about 8:00 p.m. on 1 August 2000, and he told her that he was "going to the studio." Defendant, a twenty-six year old rapper, frequently rapped at a studio located at another performer's house. She testified that defendant phoned her from the studio some time that night. Upon questioning by the State during cross-examination,

Valentien testified that defendant had previously been convicted of forcible robbery.

On 27 April 2001, a jury found defendant guilty of two counts of *robbery with a dangerous weapon.* He was sentenced, within the presumptive range, to 103-133 months for each conviction, to be served consecutively. Defendant appeals.

Defendant presents three assignments of error on appeal contending the errors were violations of his federal and state constitutional rights. However, defendant makes no arguments supporting the assertion that his constitutional rights were violated. Therefore, we shall only address defendant's substantive arguments.

I.

**[1]** By defendant's first assignment of error, he argues the trial court committed reversible error by allowing the State to question a defense witness on cross-examination as to defendant's prior conviction for forcible robbery pursuant to Rule 806 of the North Carolina Rules of Evidence. We disagree.

Rule 806 provides:

> When a hearsay statement has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported, by any evidence which would be admissible for those purposes if declarant had testified as a witness. Evidence of a statement or conduct by the declarant at any time, inconsistent with his hearsay statement, is not subject to any requirement that he may have been afforded an opportunity to deny or explain. If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine him on the statement as if under cross-examination.

N.C. Gen. Stat. § 8C-1, Rule 806 (2001). Essentially, "this rule treats the out-of-court declarant the same as a live witness for purposes of impeachment." *State v. Small,* 131 N.C. App. 488, 492, 508 S.E.2d 799, 802 (1998).

Defendant argues that evidence of his prior conviction for forcible robbery was improperly admitted under Rule 806 because (1) the statement upon which the State relied to use Rule 806 was not hearsay, (2) the State's questioning of a defense witness as to defendant's prior conviction was not consistent with the Rules of Evidence, and (3) evidence of defendant's prior conviction was inadmissible

under Rule 403 because the prejudicial effect of the prior conviction heavily outweighed its probative value.

Defendant first argues that the statement upon which the State relied to use Rule 806 was not hearsay. The statement at issue was elicited by defense counsel during direct examination of Valentien. Valentien testified that defendant returned from work in her car around 8:00 p.m. on 1 August 2000. She was then asked, "[w]hen he brought it home, what did he do then?" Valentien testified, "[h]e told me he was going to the studio." Defendant contends that "going to the studio" is not hearsay.

Rule 801 defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2001). During the trial, Valentien testified during direct examination, without objection, that defendant stated he was "going to the studio." This statement was followed by defense counsel asking questions which elicited further testimony that clarified and cultivated the statement's meaning. Valentien's testimony assisted in establishing an alibi for defendant that evening, and therefore, was hearsay because it was offered for the truth of the matter asserted.

Next, defendant argues that even if the statement was hearsay, the State violated Rule 806 by attacking defendant's credibility in a manner inconsistent with the Rules of Evidence. Specifically, defendant contends that since Rule 609(a) requires that evidence of a witness' prior conviction be elicited from the witness or established by public record during cross-examination or thereafter, evidence of his prior conviction could not be elicited from Valentien—only from defendant. See N.C. Gen. Stat. § 8C-1, Rule 609(a) (2001). However, pursuant to Rule 806, once defendant's statement was admitted into evidence through the testimony of Valentien, the State was allowed to attack defendant's credibility the same as if defendant had testified in court. Thus, testimony of defendant's prior conviction was not inconsistent with Rule 609(a) because it was properly elicited from Valentien, the witness who took the place of defendant offering live testimony.

Defendant further argues that evidence of his prior conviction for forcible robbery was inadmissible because, under Rule 403's balancing test, the prejudicial effect of his prior conviction far exceeded its probative value. See N.C. Gen. Stat. § 8C-1, Rule 403 (2001).

Nevertheless, Rule 609(a) states that evidence of this type *shall* be admitted to attack the credibility of a witness. N.C. Gen. Stat. § 8C-1, Rule 609(a). Under Rule 609, when the conviction is less than ten years old, no balancing is required prior to admission of it as evidence for impeachment purposes. *See id.* Although the record and transcript do not indicate when defendant's conviction occurred, defendant, a twenty-six year old man, does not argue that this conviction was more than ten years old.

Accordingly, evidence of the defendant's prior conviction for forcible robbery was admissible to attack his credibility as a hearsay declarant.

II.

[2] By defendant's second assignment of error, he argues the trial court erred in denying his motion to dismiss for insufficient evidence. We disagree.

In considering a motion to dismiss, the trial court must consider the evidence in the light most favorable to the State, drawing every reasonable inference in the State's favor. *State v. Earnhardt*, 307 N.C. 62, 67, 296 S.E.2d 649, 652-53 (1982). To deny a motion to dismiss, there must be "substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *Id.* at 65-66, 296 S.E.2d at 651. Substantial evidence is that which a reasonable mind would consider adequate to support a conclusion. *State v. Franklin*, 327 N.C. 162, 171, 393 S.E.2d 781, 787 (1990). Furthermore, substantial evidence can be provided by direct and circumstantial evidence. *See Earnhardt*, 307 N.C. at 68, 296 S.E.2d at 653.

In the case *sub judice*, the State presented substantial evidence to support each element of robbery with a dangerous weapon to overcome defendant's motion to dismiss. Robbery with a dangerous weapon is "(1) an unlawful taking or an attempt to take personal property from the person or in the presence of another, (2) by use or threatened use of a firearm or other dangerous weapon, (3) whereby the life of a person is endangered or threatened." *State v. Call*, 349 N.C. 382, 417, 508 S.E.2d 496, 518 (1998), *appeal after remand*, 353 N.C. 400, 545 S.E.2d 190, *cert. denied,* —— U.S. ——, 151 L. Ed. 2d 548 (2001).

In establishing the first element, the State presented substantial evidence that defendant was the man who unlawfully took the vic-

tims' personal property. The victims, Ventura and Falcon, both provided nearly identical descriptions of the robber's general appearance—descriptions that matched defendant's appearance. Ventura even positively identified defendant from a picture line-up as the person who robbed him the night of 1 August 2000. Ventura also testified that his new cell phone was stolen, which was later discovered by Officer Bartay in the car driven by the man who robbed Falcon. The car contained fingerprints that matched defendant's prints. Thus, given the direct and circumstantial evidence offered at trial, there was substantial evidence to support this element of robbery with a dangerous weapon.

Additionally, there was substantial evidence offered establishing that a dangerous weapon was used in the robbery and that the lives of the victims were threatened. Ventura and Falcon both testified that defendant placed a gun to the back of their heads. Although they both saw the gun, neither could specify the type of gun used by defendant. The gun was never found during the investigation of the robberies. Nevertheless, in situations where evidence is presented that a firearm was used during the commission of a robbery, and there is no evidence that the firearm was incapable of endangering or threatening the victim's life, the jury may infer that the victim's life was threatened or endangered. *State v. Hewett*, 87 N.C. App. 423, 424-25, 361 S.E.2d 104, 105 (1987). Since the trial court is to make all reasonable inferences in favor of the State when considering a defendant's motion to dismiss, that would include inferring that the gun used by defendant was a dangerous weapon capable of endangering the lives of Ventura and Falcon. Applying such an inference, the State presented substantial evidence of the remaining elements of robbery with a dangerous weapon.

Thus, the trial court did not err in denying defendant's motion to dismiss for insufficient evidence.

### III.

[3] By his final assignment of error, defendant argues the trial court erred by failing to find any mitigating factors during his sentencing. However, when the court decides to stay within the presumptive range of sentencing, it is not required to make findings of aggravating or mitigating factors. *State v. Campbell*, 133 N.C. App. 531, 542, 515 S.E.2d 732, 739 (1999). The court did not depart from the presumptive range when it sentenced defendant; therefore, it was not required to make a finding of any mitigating factors.

For the foregoing reasons, we conclude that defendant's conviction and sentencing on two counts of robbery with a dangerous weapon should be upheld.

No error.

Judges WALKER and McGEE concur.