An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA 24-896

Filed 3 December 2025

Nash County, No. 19CR052513-630

STATE OF NORTH CAROLINA

v.

LiMICHAEL D. PITTMAN, Defendant.

Appeal by defendant from final judgment entered 18 January 2024 by Judge Timothy W. Wilson in Nash County Superior Court. Heard in the Court of Appeals 14 October 2025.

> *Attorney General Jeff Jackson, by Special Deputy Attorney General Heidi M. Williams for the State.*

> *Anne Bleyman for defendant-appellant.*

DILLON, Chief Judge

Defendant LiMichael Deshown Pittman appeals from judgment entered by the trial court upon a jury verdict convicting him of first-degree murder by torture. Defendant contends the trial court erred in failing to grant his motion to dismiss

based on insufficiency of the evidence. For the reasoning below, we conclude Defendant received a fair trial, free from reversible error.

## I. Background

The State's evidence at trial tended to show as follows. This matter concerns the killing of Latisha Jasmein Lee, which occurred on 13 February 2019. Defendant was an acquaintance of Ms. Lee's roommate. Defendant and the roommate texted each other approximately a month or two prior to Ms. Lee's violent death regarding the sale of weed and a gun. Regarding the sale of weed, the roommate texted Defendant the apartment address where he and Ms. Lee lived.

Defendant's phone records indicated Defendant was awake and texting another individual during the early morning of 13 February 2019. Video footage from Ms. Lee's apartment complex that morning shows a black sedan pulling into the parking area near Ms. Lee's apartment around 5:11 AM. Ms. Lee's roommate testified he would not usually leave for work until around 6:20 AM and that he left around this time on 13 February 2019 and locked the apartment door. Around 6:53 AM two men are viewed on apartment video footage leaving the breezeway area leading up to Ms. Lee's apartment. Defendant owned a 2012 black Buick Verano, equipped with a GPS system for repossession tracking purposes.

Around 11:00 AM on 13 February 2019, the roommate came back to the apartment from work and found the apartment door cracked open. Once he opened

the door completely, he saw Ms. Lee dead on the living room floor, with blood "everywhere" and clothing and other items strewn about the apartment. Her body displayed over 150 sharp force injuries: twenty on her face, twenty-two on her neck, eighty-six on her torso, one on her right thigh, and twenty-six on her arms. The roommate indicated Ms. Lee did not keep the apartment messy.

The roommate later discovered that a gun he owned was missing from its usual place in the apartment. The roommate and Defendant knew each other to have guns.

Due to the amount of sharp force injuries on Ms. Lee's body, the medical examiner who performed the autopsy grouped the wounds into fifteen groups. The medical examiner described nine of the fifteen groups as non-lethal. These nine non-lethal groups contained ninety-eight of the approximately 150 sharp force injuries. The remaining six areas were either potentially lethal or lethal. Ms. Lee's cause of death was multiple sharp force injuries over all areas of the body. Defendant's DNA was found at the murder scene.

## II.    Analysis

This case requires us to determine whether the trial court properly denied Defendant's motion to dismiss the charge of first-degree murder by torture. Specifically, Defendant contends the evidence is insufficient to prove (1) Defendant killed Ms. Lee, (2) Defendant intentionally tortured Ms. Lee, (3) Defendant proximately caused Ms. Lee's death, and (4) Defendant engaged in a course of conduct which intentionally inflicted grievous pain and suffering on Ms. Lee for the purpose

of punishment, persuasion, or sadistic pleasure. For the reasons below, we conclude the trial court properly denied Defendant's motion to dismiss. Defendant properly preserved the motion to dismiss at trial. *See* N.C. R. App. P. 10(a)(3); *State v. Golder*, 374 N.C. 238, 245–46 (2020).

### A. Standard of Review

The standard of review for the denial of a motion to dismiss is de novo. *State v. Barnett*, 368 N.C. 710, 713 (2016).

In ruling on a motion to dismiss, the trial court must consider whether substantial evidence supports each element of the offense charged and whether the defendant is the perpetrator. *Golder*, 374 N.C. at 249. Substantial evidence mandates "more than a scintilla of evidence," *State v. Earnhardt*, 307 N.C. 62, 66 (1982), or "the amount necessary to persuade a rational juror to accept a conclusion." *Golder*, 374 N.C. at 249. Competent and incompetent evidence are considered in the light most favorable to the State, the State is entitled to every reasonable inference, *id.* (citing *State v. Powell*, 209 N.C. 95, 99 (1980), and "any contradictions or conflicts in the evidence are resolved in favor of the State, and evidence unfavorable to the State is not considered." *State v. Miller*, 363 N.C. 96, 98 (2009) (internal citations omitted).

Circumstantial and direct evidence are given the same weight when testing the sufficiency of the evidence for a motion to dismiss. *Earnhardt*, 307 N.C. at 68. Circumstantial evidence is proof of a chain of facts and circumstances indicating the

guilt or innocence of a defendant." *State v. Adcock*, 310 N.C. 1, 36 (1984) (quoting 1 E. Devitt & C. Blackmar, *Federal Jury Practice and Instructions* § 15.02 (3d ed.1977)).

## B. Murder by Torture

As mentioned above, Defendant argues a lack of sufficient evidence for each essential element of the statute for murder by torture. We disagree. Viewing the evidence in the light most favorable to the State, we conclude the evidence supports a reasonable inference that Defendant murdered Ms. Lee by torture.

Murder by torture is classified as first-degree murder, N.C.G.S.§ 14-17(a), requiring a showing that (1) the defendant intentionally tortured the victim, and (2) the torture must be the proximate cause of the victim's death. *State v. Stroud*, 345 N.C. 106, 112 (1996) (citing *State v. Crawford*, 329 N.C. 466, 479–81 (1991)).

Torture is "the course of conduct by one or more persons which intentionally inflicts grievous pain and suffering upon another for the purpose of punishment, persuasion, or sadistic pleasure." *Crawford*, 329 N.C. at 484. Course of conduct is "the pattern of the same or similar acts, repeated over a period of time, however short, which established that there existed in the mind of the defendant a plan, scheme, system or design to inflict cruel suffering upon another." *Id.*

Neither premeditation, deliberation, nor specific intent to kill are elements of murder by torture, *State v. Johnson*, 317 N.C. 193, 203 (1986), nor is malice an element of murder by torture. *Crawford*, 329 N.C. at 481. The law conclusively

presumes the murder was committed with premeditation, deliberation, and malice. *Johnson*, 317 N.C. at 203; *Crawford*, 329 N.C. at 481.

### 1. *Defendant's presence at scene*

First, based on the circumstantial evidence presented at trial it is reasonable to infer Defendant was present at the scene of Ms. Lee's murder. Each piece of evidence is addressed in turn.

First, Defendant maintained a GPS device in his Buick for repossession purposes. This GPS device showed Defendant's Buick leaving his residence in the early hours on the day of Ms. Lee's death. Correspondingly, a similar looking black sedan drove into Ms. Lee's apartment parking area at 5:11 AM, approximately twenty-two minutes later, as shown on the apartment surveillance footage. This is approximately four minutes longer than it took when the lead investigator on Defendant's case drove the same route.

Second, two individuals are viewed on apartment surveillance footage leaving the breezeway area where Ms. Lee's apartment is located at 6:53 AM and getting into the same black sedan viewed on video footage pulling in earlier the same morning.

Third, Defendant's DNA profile matched DNA located on a piece of a blue disposal vinyl glove found under Ms. Lee's body as well as DNA found under Ms. Lee's

fingernails.[1] Contrary to Defendant's trial testimony, the fingernail DNA evidence is corroborated by the testimony of an acquaintance of Defendant, who stated Defendant told her the girl Defendant killed scratched his face and his DNA was under her fingernails.

Fourth, Defendant's phone records showed a break in Defendant's texting during the probable time of Ms. Lee's murder, despite back-and-forth texting with another individual prior to and after Ms. Lee's murder. Moreover, Defendant's phone records fail to indicate he was awake during the same early hours any other day.

This circumstantial evidence carries the same weight as direct and is sufficient to allow a reasonable mind to infer Defendant's presence at Ms. Lee's apartment on the morning of her murder.

### 2. *Intentional torture*

Second, the evidence is sufficient to allow a reasonable mind to infer Defendant intentionally tortured Ms. Lee. The evidence showed Defendant inflicted over 150 sharp force injuries all over Ms. Lee's body, many of which were non-fatal. While it is unclear the order in which Defendant inflicted the lethal versus non-lethal sharp force injuries on her body, the medical examiner at trial testified many of the sharp force injuries showed bleeding or hemorrhaging and the medical examiner indicated

---

[1] Defendant contends the DNA could be one of his many male relatives living in the area. This Court finds this argument unpersuasive considering other circumstantial evidence. *See State v. Stone*, 323 N.C. 447, 452 (1988) ("Circumstantial evidence may withstand a motion to dismiss and support a conviction even when the evidence does not rule out every hypothesis of innocence.").

Ms. Lee was likely conscious during the injuries. The medical examiner's testimony allows a reasonable mind to infer Ms. Lee was alive and conscious to feel the pain of the hundreds of sharp force injuries. The amount of sharp force injuries on Ms. Lee displays a "pattern of same or similar acts, repeated over" approximately twenty minutes. *See Crawford*, 329 N.C. at 479. Similarly, the evidence is sufficient to permit a reasonable mind to infer the 150 plus sharp force injuries occurred between 6:30 AM when Ms. Lee's roommate left for work and 6:53 AM when two men are viewed on surveillance footage getting into the black sedan.

Additionally, based on the autopsy, the physically visible injuries showed Ms. Lee had defensive wounds on her upper extremities and right thigh, a knife scrape across her stomach without making a deep puncture wound, her eye was stabbed with some of the fat around the eye protruding from the wound below, she coughed up blood as evidenced from white foam around her mouth and nose, she was hit in the mouth with a blunt object, and she maintained a laceration of her lip and a tear inside her mouth. The medical examiner testified most of Ms. Lee's injuries occurred when her heart was still beating.

The defensive wounds on Ms. Lee's arms, hands and right thigh permit a reasonable inference of Ms. Lee's consciousness and her fighting back against Defendant's attacks. This evidence, paired with the facts indicating Ms. Lee's apartment was ransacked and her roommate's gun disappeared post-murder, allows a reasonable mind to infer Defendant kept Ms. Lee alive for the purpose of eliciting

information from her as he searched the apartment.

Defendant argues many of North Carolina's murder by torture cases are related to repeated child abuse over a period of hours, days, or weeks for the purpose of punishment, and the facts of those cases are not analogous to Defendant's case.[2] However, the murder by torture statute is not beholden to facts of previous case law nor torture inflicted for the purpose of punishment. Rather, this Court engages in a de novo review of whether substantial evidence allows a reasonable inference Defendant committed the charged offense.

This Court finds *People v. Chatman*, 133 P.3d 534 (Cal. 2006), persuasive. There, the Supreme Court of California held there was sufficient evidence to support the jury's finding of murder by torture where the defendant stabbed the victim fifty-one times, with only six being lethal but not "immediately fatal." *Chatman*, 133 P.3d at 661. The scene displayed blood splattering everywhere; scores of wounds across the victim's face, neck, back, chest, and torso; and an indication it would have taken the victim "a number of minutes . . . to expire" based on such wounds. *Id.* California's murder by torture statute is similar to North Carolina's because it requires an intentional act "to inflict extreme and prolonged pain for the purpose of revenge,

---

[2] *See e.g.*, *State v. Pierce*, 346 N.C. 471 (1997); *State v. Lee*, 348 N.C. 474 (1998); *State v. Crawford*, 329 N.C. 466 (1991); *State v. Smith*, 289 N.C. App. 707 (2023); *State v. Phillips*, 328 N.C. 1 (1991); *State v. Richardson*, 385 N.C. 101 (2023); *State v. Anderson*, 350 N.C. 152 (1999). *See State v. Anderson*, 346 N.C. 158, 161 (1997) (emphasis added) (stating torture may be for the purpose of punishment, *persuasion*, or sadistic pleasure).

extortion, *persuasion*, or for any other sadistic purpose." *Chatman*, 133 P.3d at 660 (emphasis added); West's Ann. Cal. Penal Code § 189(a).

Based on the evidence shown, it is reasonable to infer Defendant intended to inflict grievous pain on Ms. Lee through the act of stabbing, repeated *over* 150 times and drawn out over approximately twenty minutes. The evidence shows she was alive for many of those 150 sharp force injuries. Additionally, the evidence is sufficient to reasonably infer Defendant inflicted many non-lethal injuries to persuade her to reveal the location of roommate's gun or other item(s) of value.

### 3. Proximate cause

Third, the evidence is sufficient to permit a reasonable mind to infer Ms. Lee died from the sharp force injuries. She suffered over 150 sharp force injuries, and her cause of death was multiple sharp force injuries.

Viewing all the evidence in a light most favorable to the State and taking every inference reasonable from such, substantial evidence supports the reasonable inference that (1) Defendant traveled to Ms. Lee's apartment on the morning of 13 February 2019, (2) Defendant inflicted grievous pain on Ms. Lee because he stabbed her over 150 times, many being non-lethal, in approximately twenty minutes, (3) Defendant stabbed Ms. Lee for the purpose of persuasion because he was attempting to elicit information regarding the whereabouts of her roommate's gun or anything of value, and (4) Defendant caused Ms. Lee to die of multiple sharp force injuries. Accordingly, the trial court did not err by denying Defendant's motion to dismiss.

III.    Conclusion

The trial court properly denied Defendant's motion to dismiss.    Defendant received a fair trial, free of prejudicial error.

NO ERROR.

Judges GRIFFIN and FLOOD concur.

Report per Rule 30(e).