ROBERT C. SEMONES v. SOUTHERN BELL TELEPHONE & TELEGRAPH COMPANY

No. 9126SC478

(Filed 2 June 1992)

1. **Malicious Prosecution § 11 (NCI3d)— bad check—inference of knowledge of insufficient funds—insufficient**

    The trial court erred by granting summary judgment for defendant on a malicious prosecution claim arising from a worthless check prosecution where there was no evidence in the record that defendant had reasonable grounds to believe that plaintiff knew when he drew the check that there were insufficient funds or lack of credit with which to pay the check upon presentation. The mere issuing of a check which is returned due to insufficient funds or lack of credit, without more, is not evidence from which the requisite knowledge can be inferred.

    **Am Jur 2d, Malicious Prosecution § 125.**

2. **Process § 18 (NCI3d)— worthless check prosecution—no improper act after issuance of process—summary judgment**

The trial court properly granted summary judgment for defendant on an abuse of process claim arising from a worthless check prosecution where plaintiff presented no meritorious evidence of an improper act after issuance of process. Plaintiff's contention that defendant's failure to notify the district attorney of the bankruptcy of the corporation of which plaintiff had been president was without merit because the automatic stay triggered by a bankruptcy does not operate against the commencement or continuation of criminal actions.

**Am Jur 2d, Process § 52.**

APPEAL by plaintiff from order entered 26 February 1991 in MECKLENBURG County Superior Court by *Judge Loto Greenlee Caviness*. Heard in the Court of Appeals 12 March 1992.

*Weinstein & Sturges, P.A., by Fenton T. Erwin, Jr. and L. Holmes Eleazer, Jr., for plaintiff-appellant.*

*Petree Stockton & Robinson, by John T. Allred, Richard E. Fay, and Charles H. Rabon, Jr., for defendant-appellee.*

GREENE, Judge.

Plaintiff appeals from an order entered 26 February 1991, granting defendant's motion for summary judgment on plaintiff's claims for malicious prosecution and abuse of process.

The facts pertinent to this appeal are as follows: Plaintiff was the president of Today's World Furniture, Inc. (Today's World) in Claremont, North Carolina, from its founding in 1979 until early March, 1986. In November, 1985, Rothwell Corporation purchased Today's World. Plaintiff, however, remained president until he resigned in March, 1986. On 3 January 1986, Today's World made a deposit into its account at First Union National Bank (First Union) in Conover. On the same day, Today's World issued a check signed by plaintiff made payable to defendant in the amount of $1,084.88. After plaintiff mailed the check to defendant, plaintiff learned that Today's World's account had been put on hold by First Union. Plaintiff discovered that three of Today's World's creditors had placed the company in involuntary bankruptcy on 15 December

1985. Plaintiff was unaware of the bankruptcy action at the time that he signed the check made payable to defendant.

Defendant presented the check to First Union, which later returned the check marked with the notation "uncollected funds." Defendant notified Today's World that the check had been dishonored and that, unless it was covered and other amounts owed to defendant paid, defendant would disconnect telephone service to Today's World. In late January, 1986, defendant disconnected Today's World's telephone service. Defendant notified Today's World that service would be restored upon payment of amounts owed defendant, which included the amount of the returned check. On 25 January 1986, Today's World made a cash payment of $2,100.00 at Dellinger's Department Store, an authorized collection agent for defendant. This payment included payment for the dishonored check. Defendant restored telephone service to Today's World, and William Self, Rothwell Corporation's liaison at Today's World, informed plaintiff of the payment of Today's World's account with defendant.

In March, 1986, plaintiff resigned from Today's World and moved to Greensboro. On 6 October 1986, one of defendant's service representatives prepared a "Dishonored Check Security Referral" for the 3 January 1986 check that had previously been dishonored. Defendant sent the dishonored check referral to its Security Division where it was assigned to Mike Payne (Payne). Payne was the staff manager who performed investigative work and obtained issuance of warrants for bad checks delivered to defendant. On 8 October 1986, Payne sent a certified letter to plaintiff at plaintiff's Greensboro address. In the letter, Payne stated that the 3 January 1986 check in the amount of $1,084.88 had been dishonored, and that unless it was made good within fifteen days, defendant would institute legal action against plaintiff in accordance with N.C.G.S. § 14-107, North Carolina's worthless check statute.

Near the latter part of October, 1986, plaintiff telephoned Payne concerning the letter. Plaintiff's version and Payne's version of the telephone conversation conflict. Plaintiff stated that he explained the circumstances surrounding the check to Payne, specifically, (1) that the check had been dishonored due to "held funds"; (2) that the check was thereafter paid at Dellinger's Department Store; (3) that service was subsequently reinstated; (4) that plaintiff had resigned from Today's World in March, 1986, and moved to Greensboro; (5) that Today's World was bankrupt; and (6) that

SEMONES v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

[106 N.C. App. 334 (1992)]

Payne should contact William Self at Today's World. According to Payne, plaintiff told him only that he no longer worked at Today's World and that he was merely an employee when he had worked there. Furthermore, plaintiff did not mention the payment at Dellinger's or the bankruptcy. Both plaintiff and Payne stated, however, that at the end of the telephone conversation, Payne told plaintiff that he would look into the matter and get back in touch with plaintiff.

Payne described his investigation of the case as follows:

[a] copy of the business office record list was attached to the [file] when I received it, and I looked at the credit information on that. It listed [plaintiff] as the owner of the company. I contacted the business office to determine whether there had been any changes in ownership or anything of the company, other than what information I had. And I was advised that [plaintiff] had been the owner of the company and the person they had contacted to collect bills and so on. They had contacted him a number of times, when there had been collection problems with him in the past. And that, essentially, is it.

Payne also stated that he checked the signature card on file at First Union in order to verify that the signature on the check was not a forgery. First Union still had plaintiff listed as an officer of Today's World, and advised Payne that there had been no change in the company ownership.

On 10 December 1986, Payne procured a warrant for plaintiff's arrest charging plaintiff with violating North Carolina's worthless check statute by unlawfully and willfully drawing, making, uttering, and issuing and delivering to defendant a check drawn on First Union for $1084.88, while knowing at the time that he did not have sufficient funds on deposit or credit with the bank with which to pay the check upon presentation.[1] Payne stated that he based his determination that plaintiff *knew* that there were insufficient funds in the Today's World First Union account with which to

---

1. The general rule is that a corporate officer who issues a worthless check on behalf of the corporation may be guilty of violating the worthless check statute. 68 A.L.R.2d 1269, 1271 (1959); *see also State v. Dowless*, 217 N.C. 589, 590, 9 S.E.2d 18, 19 (1940) (proper procedure is to indict corporate officer in his official capacity, and not in his individual capacity). Here, although the warrant charged plaintiff individually, and not as an officer of Today's World, this error is not before this Court.

pay the check on "[j]ust the fact that the check was not good." In February, 1987, prior to plaintiff's arrest, defendant was notified that an involuntary bankruptcy petition had been filed against Today's World on 29 October 1986. On 23 February 1987, defendant filed a proof of claim for the sum of $2,851.24 in the United States Bankruptcy Court for the Western District of North Carolina. Plaintiff was arrested at his home pursuant to the worthless check warrant on 25 February 1987. After several continuances, the district attorney voluntarily dismissed the prosecution on 5 October 1987.

In December, 1988, plaintiff filed this action against defendant for malicious prosecution and abuse of process. The trial court granted defendant's motion for summary judgment on both claims.

---

The issues presented are whether I) the return of a check due to insufficient funds or lack of credit constitutes prima facie evidence that the person issuing the check had knowledge at the time of issuance that there were insufficient funds or lack of credit with which to pay the check upon presentation; and II) defendant's failure to notify the district attorney of Today's World's bankruptcy supports plaintiff's claim for abuse of process.

I

[1] Plaintiff argues that the trial court erroneously granted summary judgment for defendant on plaintiff's claim for malicious prosecution because defendant failed to show that an essential element of plaintiff's claim is nonexistent.

A claim for malicious prosecution has four essential elements: (1) initiation by the defendant of an earlier proceeding; (2) lack of probable cause for such initiation; (3) malice, either actual or implied; and (4) termination of the earlier proceeding in favor of the plaintiff. *Jones v. Gwynne*, 312 N.C. 393, 397, 323 S.E.2d 9, 11 (1984). Probable cause in the context of a malicious prosecution action is "the existence of such facts and circumstances, known to him at the time, as would induce a reasonable [person] to commence a prosecution." *Pitts v. Village Inn Pizza, Inc.*, 296 N.C. 81, 87, 249 S.E.2d 375, 379 (1978) (quoting *Morgan v. Stewart*, 144 N.C. 424, 430, 57 S.E. 149, 151 (1907)). "Implied" or "legal" malice may be inferred from proof that the defendant lacked probable cause for initiating the proceeding. *Pitts*, 296 N.C. at 86-87, 249 S.E.2d at 379.

SEMONES v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

[106 N.C. App. 334 (1992)]

Because defendant moved for summary judgment in this case, [it] has "the burden of showing that an essential element of the plaintiff's claim is nonexistent, or that the plaintiff cannot produce evidence to support an essential element of his claim." *Taylor v. Taylor Products, Inc.*, 105 N.C. App. 620, 625, 414 S.E.2d 568, 572 (1992). The existence of the first and fourth elements of malicious prosecution in the instant case is undisputed. Defendant's employee Michael Payne procured the issuance of a warrant for plaintiff's arrest on 10 December 1986 for violation of N.C.G.S. § 14-107, North Carolina's worthless check statute. The proceeding was subsequently voluntarily dismissed by the district attorney. *See Pitts*, 296 N.C. at 87, 249 S.E.2d at 379 (voluntary dismissal constitutes termination in favor of plaintiff so as to satisfy that element of malicious prosecution). Defendant, however, argues that it is entitled to summary judgment because defendant had probable cause to initiate the worthless check proceeding.

In order to have probable cause to initiate a worthless check proceeding, one need not be certain that the person against whom the action is instituted will be convicted of the crime. It is necessary only that the initiator of the action have reasonable grounds to believe that the person charged is guilty of the crime. 52 Am Jur 2d Malicious Prosecution § 52 (1970). A person commits the crime of issuing a worthless check when he

> draw[s], make[s], utter[s] or issue[s] and deliver[s] to another, any check or draft on any bank or depository, for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering, issuing and delivering such check or draft as aforesaid, that the maker or drawer thereof has not sufficient funds on deposit in or credit with such bank or depository with which to pay the same upon presentation.

N.C.G.S. § 14-107 (1991).[2] Subsequent payment of the check is immaterial because knowingly putting the worthless commercial paper into circulation is the act made criminal by Section 14-107. *State v. Cruse*, 253 N.C. 456, 459, 117 S.E.2d 49, 51 (1960). Accordingly, the essential elements of this crime are that (1) the person charged issued a check to another; (2) such person had insufficient funds

---

2. Our use in this opinion of only the term "issue" when addressing violations of Section 14-107 is for convenience and is intended to incorporate drawing, making, uttering or issuing and delivering a check, as specified in the statute.

on deposit in or lack of credit with the drawee bank with which to pay the check upon presentation; and (3) at the time the check was written, the issuer knew that there were insufficient funds or lack of credit with which to pay the check upon presentation. Knowledge in this context "connotes a certain and definite mental attitude" on the part of the person charged. *State v. Miller*, 212 N.C. 361, 363, 193 S.E. 388, 389 (1937).

In 1979, our Legislature enacted a statute which sets forth methods by which the State can establish a prima facie case of the first two elements of the crime of issuing a worthless check. *See* N.C.G.S. § 14-107.1 (1991). However, Section 14-107.1 does not set forth a method by which the State can establish a prima facie case of the essential element of knowledge. Defendant argues nonetheless that a prima facie case of knowledge is established whenever a person issues a check without sufficient funds or credit with which to pay the check upon presentation. We disagree.

Knowledge or intent "is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred." *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974). For example, the knowledge required under Section 14-107 can be inferred from evidence that the defendant issued other worthless checks within the same time period as the check at issue, or from evidence that the defendant issued a check immediately after making a deposit into his account, knowing that the policy of his drawee bank is not to pay checks until deposits made into the drawer's account are actually collected. *See Cruse*, 253 N.C. at 459, 117 S.E.2d at 51. However, the mere issuing of a check which is returned due to insufficient funds or lack of credit, without more, is not evidence from which the requisite knowledge can be inferred. To allow such an inference would essentially eliminate knowledge as a separate element of the criminal offense. This would *ipso facto* transform the worthless check statute into a version which was repealed by our Legislature in 1927, *see* C.S. § 4283(a) (1925) (issuing a check with insufficient funds or credit to pay check upon presentation constitutes a crime), and would raise serious questions about the statute's constitutionality. *See State v. Yarboro*, 194 N.C. 498, 140 S.E. 216 (1927) (new worthless check statute does not unconstitutionally impose imprisonment for a debt because Legislature added guilty knowledge as an essential element of the offense).

There is no evidence in the record that defendant had reasonable grounds to believe that plaintiff knew when he drew the check that there were insufficient funds or lack of credit with which to pay the check upon presentation. Therefore, on the evidence before the court at the summary judgment hearing, defendant did not have probable cause to initiate against plaintiff a criminal prosecution for issuing a worthless check. Thus, defendant was not entitled to summary judgment on this basis. Furthermore, summary judgment cannot be supported on the malice element because malice in a malicious prosecution action can be inferred from a lack of probable cause. Accordingly, the trial court erred in granting summary judgment for defendant.

## II

[2] Plaintiff argues that defendant is not entitled to summary judgment on plaintiff's claim for abuse of process. We disagree.

In order to succeed on a claim for abuse of process, the plaintiff must establish that (1) a prior proceeding was initiated against the plaintiff by the defendant or used by him to achieve an ulterior motive or purpose; and (2) once the proceeding was initiated, the defendant committed some willful act not proper in the regular prosecution of the proceeding. *Stanback v. Stanback*, 297 N.C. 181, 200, 254 S.E.2d 611, 624 (1979). It is well established that without evidence of this second element, that is, of an improper act occurring *subsequent to* the issuance of process, no claim for abuse of process will lie. *Ellis v. Wellons*, 224 N.C. 269, 271, 29 S.E.2d 884, 885 (1944); *see also Edwards v. Advo Sys., Inc.*, 93 N.C. App. 154, 157, 376 S.E.2d 765, 767 (1989), *overruled on other grounds*, 327 N.C. 283, 395 S.E.2d 85 (1990) (summary judgment for defendants on plaintiff's abuse of process claim proper where plaintiff raised no issue of fact regarding abuse of judicial system after the institution of the prior counterclaims). Because we determine that plaintiff presented no meritorious evidence of this second element, we need not address plaintiff's argument that defendant initiated the worthless check proceeding in order to achieve an ulterior purpose.

Plaintiff argues that defendant's failure to notify the district attorney of Today's World's second involuntary bankruptcy (filed 29 October 1986), of which defendant became aware sometime in February, 1987, constitutes an act not proper in the regular prosecution of the proceeding. Plaintiff argues that defendant had a

duty to seek dismissal of the prosecution against plaintiff after learning of the bankruptcy. However, plaintiff's argument is without merit because the automatic stay of actions triggered by a bankruptcy does not operate against the commencement or continuation of criminal actions, such as worthless check prosecutions. 11 U.S.C. § 362(b)(1) (1979). Absent meritorious evidence of an improper act on the part of defendant after issuance of process, plaintiff has failed to establish a claim for abuse of process.

For the foregoing reasons, the trial court's grant of summary judgment against plaintiff on plaintiff's claim for malicious prosecution is reversed, and the grant of summary judgment against plaintiff on the abuse of process claim is affirmed.

Affirmed in part, reversed in part and remanded.

Judges JOHNSON and COZORT concur.