STATE OF NORTH CAROLINA v. MICHAEL JOSEPH MUCCI

No. COA03-631

(Filed 20 April 2004)

## 1. False Pretense— felonious issuing of worthless checks— motion to dismiss—sufficiency of evidence

The trial court did not err by denying defendant's motion to dismiss the charges of felonious issuing of worthless checks, because there was sufficient circumstantial evidence to infer that defendant knew that at the time he issued the checks they were worthless including that: (1) not only was there evidence that the checks had been issued with insufficient funds, but also that other checks issued within the same time period had been returned for insufficient funds; and (2) defendant actually requested the general manager of the payee to hold the checks and not deposit them immediately.

## 2. Judges— expression of opinion—evidence

The trial court did not deny defendant a fair trial in a felonious issuing of worthless checks case by allegedly expressing opinions on the evidence of defendant's guilt and about the weight to be given to the evidence, because: (1) the trial court did not encourage the jury to ignore evidence, but instead let the jurors know they could take their time with the exhibits and that it was not necessary to completely and immediately comprehend everything in the bank records prior to jury deliberations; (2) the probable meaning of the trial court's comment to the jurors that the State was "painting by numbers" on a poster was to tell them that the prosecutor was using numbers on a poster as an illustration of his argument and was not an expression of opinion on defendant's guilt; (3) the totality of circumstances revealed that additional comments noted by defendant were within the trial court's inherent supervisory powers over the conduct of the trial and were not prejudicial to defendant; and (4) the alleged "open hostility" toward defendant were admonishments that fell within the trial court's power to control the examination and cross-examination of witnesses.

STATE v. MUCCI

[163 N.C. App. 615 (2004)]

### 3. False Pretense— felonious issuing of worthless checks—instruction—reasonable person standard

The trial court did not improperly instruct the jury to apply a reasonable person standard to the knowledge element of issuing a worthless check when it instructed that a person acts knowingly when the person is aware or conscious of what he is doing and that a person has knowledge about the circumstances surrounding his act or about the results of his act when he is aware of or conscious of those circumstances or of those results.

### 4. False Pretense— felonious issuing of worthless checks—instruction—corporate officer—plain error analysis

The trial court did not commit plain error in a felonious issuing of worthless checks case by failing to instruct the jury that defendant was charged as a corporate officer drawing a check on a corporate account, because: (1) the elements of issuing a worthless check are the same whether defendant was charged as a corporate officer or as an individual; and (2) it was not probable that a different result would have been reached had the instruction been given.

### 5. Sentencing; Probation and Parole— probation—community service—restitution

The trial court erred in a felonious issuing of worthless checks case by sentencing defendant to thirty-six months of probation, twenty-five hours per week of community service, and to pay full restitution of $26,239.30, because: (1) N.C.G.S. § 15A-1343.2(d)(3) mandates that where a felon is sentenced to community punishment, probation may not be for more than thirty months unless the trial court specifically finds that a longer term is required, and there was no such finding in this case; (2) the trial court did not consider any of the factors related to defendant's ability to pay the full amount of restitution; and (3) in imposing both restitution and community service conditions upon defendant's probation, the trial court failed to consider defendant's ability to comply with both conditions simultaneously, as well as meeting his other obligations under the sentence of paying costs and fines.

Appeal by defendant from judgments entered 9 October 2002 by Judge Evelyn W. Hill in Wake County Superior Court. Heard in the Court of Appeals 4 February 2004.

*Attorney General Roy A. Cooper, III, by Special Deputy Attorney General George W. Boylan, for the State.*

*Daniel Shatz for defendant-appellant.*

HUNTER, Judge.

Michael Joseph Mucci ("defendant") appeals from four separate judgments dated 9 October 2002 entered consistent with jury verdicts finding him guilty of four counts of felonious issuing of worthless checks. Defendant was sentenced to four consecutive six to eight month sentences suspended upon his satisfactory completion of thirty-six months probation conditioned on his performance of twenty-five hours of community service per week and paying $26,239.30 in restitution. Defendant was also fined $4,000.00 and required to pay costs. For the reasons stated herein, we uphold defendant's convictions but remand this case for resentencing.

The State's evidence tends to show that defendant was the owner and president of Computer Exchange, Inc., a business that built and sold personal computers. Defendant regularly purchased supplies from Cyberock, Inc., dealing personally with Kevin Thi ("Thi"), Cyberock, Inc.'s General Manager, beginning in June 1999. The original terms of their dealing required defendant to pay on delivery, but later defendant requested "net 20" terms, under which defendant would not have to write a check for the supplies until twenty days after receiving them.

This arrangement continued until 7 September 2000, when defendant presented Thi with a check for $7,535.00 requesting that Thi not deposit the check for thirty days. On 28 September 2000, defendant presented Thi with another check for $6,000.00 requesting that it also be held. On 25 October 2000, defendant gave Thi two more checks. One was in the amount of $7,176.75 and the second was in the amount of $5,527.55. Thi asked if he could deposit the checks and defendant stated that the 25 October check for $7,176.75 could be deposited. Thi attempted to deposit that check but it was returned for insufficient funds. Thi subsequently attempted to deposit the remaining three checks but they were returned marked "[s]top payment."

On 7 September 2000, defendant's company's bank account, on which the checks were written, contained a negative balance of $127.34. On 28 September, the balance was $2,339.24, and on 25 October, the balance was $3,055.82. Furthermore, the company's bank statement showed that eight checks had been returned for

insufficient funds during October 2000. Defendant's company subsequently went out of business in 2001.

The issues are whether: (I) there was sufficient evidence that defendant knowingly issued the worthless checks; (II) comments made by the trial court denied defendant a fair trial; (III) the trial court incorrectly instructed the jury to apply a reasonable person standard to the knowledge element of the offenses; (IV) the trial court committed plain error by failing to instruct the jury that defendant was charged as a corporate officer drawing a check on a corporate account; and (V) the trial court erred in sentencing defendant to thirty-six months of probation, twenty-five hours per week of community service, and to pay full restitution.

Trial Phase

I.

[1] Defendant first contends that the trial court erred by not dismissing the charges because there was insufficient evidence to submit the charges of felonious issuing of a worthless check to the jury. Specifically, defendant argues that there was no evidence that he issued worthless checks knowingly. We disagree.

"When a defendant moves for dismissal, the trial court is to determine whether there is substantial evidence (a) of each essential element of the offense charged, or of a lesser offense included therein, and (b) of defendant's being the perpetrator of the offense." *State v. Earnhardt*, 307 N.C. 62, 65-66, 296 S.E.2d 649, 651 (1982). "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Id.* at 66, 296 S.E.2d at 652 (quoting *State v. Smith*, 300 N.C. 71, 78-79, 265 S.E.2d 164, 169 (1980)). In deciding a motion to dismiss, the evidence should be viewed in the light most favorable to the State. *See id.* at 67, 296 S.E.2d at 652.

N.C. Gen. Stat. § 14-107(a) makes it unlawful for

any person, firm or corporation, to draw, make, utter or issue and deliver to another, any check or draft on any bank or depository, for the payment of money or its equivalent, knowing at the time of the making, drawing, uttering, issuing and delivering the check or draft, that the maker or drawer of it has not sufficient funds on deposit in or credit with the bank or depository with which to pay the check or draft upon presentation.

N.C. Gen. Stat. § 14-107(a) (2003). This Court has recognized that the essential elements of the crime of issuing a worthless check are:

> (1) the person charged issued a check to another; (2) such person had insufficient funds on deposit in or lack of credit with the drawee bank with which to pay the check upon presentation; and (3) at the time the check was written, the issuer knew that there were insufficient funds or lack of credit with which to pay the check upon presentation.

*Semones v. Southern Bell Telephone & Telegraph Co.*, 106 N.C. App. 334, 339-40, 416 S.E.2d 909, 912-13 (1992). "Knowledge in this context 'connotes a certain and definite mental attitude' on the part of the person charged." *Id.* at 340, 416 S.E.2d at 913 (quoting *State v. Miller*, 212 N.C. 361, 363, 193 S.E. 388, 389 (1937)). "Knowledge or intent 'is a mental attitude seldom provable by direct evidence. It must ordinarily be proved by circumstances from which it may be inferred.' " *Id.* (quoting *State v. Bell*, 285 N.C. 746, 750, 208 S.E.2d 506, 508 (1974)).

> For example, the knowledge required under Section 14-107 can be inferred from evidence that the defendant issued other worthless checks within the same time period as the check at issue, or from evidence that the defendant issued a check immediately after making a deposit into his account, knowing that the policy of his drawee bank is not to pay checks until deposits made into the drawer's account are actually collected.

*Id.* "However, the mere issuing of a check which is returned due to insufficient funds or lack of credit, without more, is not evidence from which the requisite knowledge can be inferred." *Id.*

In this case, not only was there evidence that the checks had been issued with insufficient funds, there was also evidence that other checks issued within the same time period had been returned for insufficient funds and that defendant actually requested Thi to hold the checks issued in September 2000 and not deposit them immediately. This is sufficient circumstantial evidence from which to infer that defendant knew that at the time he issued the checks they were worthless. Thus, there was sufficient evidence that defendant issued the worthless checks knowingly and the trial court did not err by denying the motion to dismiss.

II.

**[2]** Defendant next argues that the trial court improperly expressed opinions on the evidence of defendant's guilt as well as making other remarks that deprived defendant of a fair trial in an atmosphere of judicial calm. A trial court is prohibited from expressing any opinion "in the presence of the jury on any question of fact to be decided by the jury." N.C. Gen. Stat. § 15A-1222 (2003). Similarly, a trial court "[i]n instructing the jury, . . . shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232 (2003). Whether a trial court's comment constitutes an improper expression of opinion "is determined by its probable meaning to the jury, not by the judge's motive." *State v. McEachern*, 283 N.C. 57, 59-60, 194 S.E.2d 787, 789 (1973). Furthermore, " 'a totality of the circumstances test is utilized' " under which defendant has the burden of showing prejudice. *State v. Anthony*, 354 N.C. 372, 402, 555 S.E.2d 557, 578 (2001) (quoting *State v. Larrimore*, 340 N.C. 119, 155, 456 S.E.2d 789, 808 (1995)). " '[U]nless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless.' " *Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808 (quoting *State v. Perry*, 231 N.C. 467, 471, 57 S.E.2d 774, 777 (1950)).

A.

Prior to the State's publication of exhibits including bank records of defendant's company, the trial court commented to the jury that it recognized that some people were better with numbers than others and then stated:

> So none of you is to feel the least bit inadequate or the least bit unprepared. You may look at these things for as long as you care to look at them. But the good thing about a jury is there is twelve. Thirteen right now of you.

> So you are not responsible for understanding everything or even anything. You just look at them and spend as much time as you want. And if anyone needs any assistance, just has a question they want to ask, shoot.

Defendant contends this amounted to an instruction to the jury that they should ignore critical evidence in the case and constituted an improper expression of opinion on the weight to be given to the evidence. We disagree.

It is apparent from the transcript that the trial court was simply informing the jury to take as much time as they wanted or needed in order to look at the exhibits that were being published. The trial court's comments are clarified in subsequent remarks to the jury: "Again, you can have as much time as you care to examine these . . . . And also know that anytime during deliberations that you want to look at these exhibits again as a group, they can be sent back to you." The thrust of these statements to the jury is clear. They were not encouragement to the jury to ignore evidence, but rather to let the jury know they could take their time with the exhibits and that it was not necessary to completely and immediately comprehend everything in the bank records prior to jury deliberations. Thus, the trial court's comment on the exhibits was not an improper expression of opinion on the weight of the evidence. *See* N.C. Gen. Stat. §§ 15A-1222, -1232.

### B.

During the State's closing argument, which was not recorded, the prosecutor apparently used a poster to illustrate his argument. After the closing, a jury member asked:

UNIDENTIFIED JUROR: Your Honor, I am sorry. Can I look at those numbers or will it be in the jury room? I apologize.

THE COURT: You have absolutely nothing to apologize for, sir. We owe you the apology of not thinking ahead. Therefore, yes, of course, you may have an opportunity.

When you come back from your break if you would like to have that poster I am sure [the State] will make it available to you.

Is that the one you are talking about?

UNIDENTIFIED JUROR: The—whatever he had on the easel there. I saw him carry something up and he kept referring to numbers and I could follow what he was pointing at but I couldn't see it.

THE COURT: He was painting by number. But we will make that available to you and I apologize that we didn't think of that ahead of time.

Defendant contends that the trial court's description of the State's closing argument as "painting by number[s]" constitutes an improper

expression of opinion on defendant's guilt. He asserts that the only legitimate interpretation of this remark is that the trial court believed defendant's guilt "was predetermined and that all the prosecutor needed to do was to fill in the details so that the jury would see the picture embedded in the outline."

As we have noted, whether a trial court's comment constitutes an improper expression of opinion "is determined by its probable meaning to the jury, not by the judge's motive." *McEachern*, 283 N.C. at 59-60, 194 S.E.2d at 789. In this case, the probable meaning of the trial court's comment to the jurors was to tell them that the prosecutor was using numbers on the poster as an illustration of his argument. Thus, the trial court was not expressing an opinion on defendant's guilt, but rather explaining for what purpose the State's poster, which at least one juror was unable to see, had been used. Nevertheless, even if this remark could possibly be construed as a statement of opinion regarding defendant's guilt, it is not apparent that it would have had any impact on the verdict returned by the jury, and thus the remark would have been at most harmless error. *See Larrimore*, 340 N.C. at 155, 456 S.E.2d at 808.

C.

Defendant further argues that these two remarks taken together and in combination with other statements by the trial court cumulatively deprived defendant of a trial in an atmosphere of judicial calm. He summarizes the additional comments on at least five occasions in which the trial court disparaged the trial process, the court system or judges, generally; at least seven occasions that the trial court told the jury it was the trial court's courtroom and the trial court made the rules, or encouraged the jury to violate rules about not eating or drinking in the courtroom; four times that the trial court told the jury they were not allowed to bring in alcoholic beverages, but wished they could; and at least five occasions where the trial court disparaged defendant's trial counsel and twice where the trial court "displayed open hostility" toward defendant.

We have reviewed all of the comments referred to by defendant in the context of the totality of the circumstances and conclude that they were within the trial court's inherent supervisory powers over the conduct of the trial and not prejudicial to defendant. *See id.* The majority of the trial court's comments involved the trial court "ordering" the jury to have a good lunch and permitting the jury to bring beverages into the courtroom. The comments to defendant's attorney

were either corrections, mild admonishments, or praise for the manner in which he was conducting himself during the trial. The remarks disparaging judges and the legal system amount to statements that: the greatest fear of judges was tripping and falling over their robes as they took the bench; traditionally judges took lunches lasting an hour and a half to give the judge time to sleep off the meal; jurors should ask the law enforcement officers where to eat, because "nobody knows where to eat better than law enforcement;" and telling one juror who needed to arrange care both for his horses and children that he could bring the horses to court with him, but not the children.

Although we do not necessarily condone these types of comments by the trial court, neither do we believe they were prejudicial to defendant, nor in the context of the entire proceeding did they deprive him of a fair trial in an atmosphere of judicial calm. *See id.* Also, as in *Larrimore*, the trial court instructed the jury that:

"The law, as indeed it should, requires the presiding judge to be impartial. You are not to draw any inference from any ruling that I have made, or any inflection in my voice or expression on my face, or any question that I have asked a witness or anything else I have said or done during this trial, that I have an opinion or have intimated an opinion as to whether any part of the evidence should be believed or disbelieved, as to whether any fact has or has not been proved, or as to what your findings ought to be."

Furthermore, the alleged "open hostility" towards defendant occurred when, as he was testifying on cross-examination, the trial court admonished defendant to answer the question that was being asked and then if he needed to explain his answer he could do so. The second instance occurred shortly after and the trial court sent the jury out before admonishing defendant a second time to answer the question that was being asked. These admonishments fall within the trial court's power to control the examination and cross-examination of witnesses. *See State v. Fleming,* 350 N.C. 109, 126, 512 S.E.2d 720, 732-33 (1999). Thus, we conclude the trial court's comments did not constitute prejudicial error.

## III.

[3] Defendant next argues that the trial court erred in instructing the jury to apply a reasonable person standard to the knowledge element of issuing a worthless check. During its deliberations, the jury sent

out a note inquiring whether knowledge that the check was worthless required actual knowledge on the part of defendant. The trial court, after clarifying what the jury was asking, instructed the jury that "[a] person acts knowingly when the person is aware or conscious of what he is doing. A person has knowledge about the circumstances surrounding his act or about the results of his act when he is aware of or conscious of those circumstances or of those results." Thus, the trial court did not instruct the jury to apply a reasonable person standard to the knowledge element and we reject this assignment of error.

IV.

**[4]** Defendant assigns plain error to the trial court's failure to instruct the jury that he was being charged as a corporate officer. Defendant was indicted as a corporate officer issuing a worthless check from a corporate account. The trial court instead submitted the case to the jury as though defendant had issued a worthless personal check from a personal account and thus, the charges submitted to the jury did not conform with the theory of the State's case. Because the elements of issuing a worthless check are the same, whether defendant was charged as a corporate officer or as an individual, the trial court did not commit plain error as it is not probable a different result would have been reached. *See State v. Odom*, 307 N.C. 655, 660-61, 300 S.E.2d 375, 378-79 (1983).

Sentencing Phase

V.

**[5]** Defendant finally contends the trial court committed several errors in sentencing him. The trial court sentenced defendant to thirty-six months of probation conditioned upon his payment of restitution in the amount of $26,239.30 and completion of twenty-five hours per week of community service, for a total of 3,600 hours over the entire probationary period. In addition, the trial court fined defendant $1,000.00 per offense, totaling $4,000.00 and ordered him to pay costs in the amount of $500.00.

A.

First, defendant argues the trial court erred in sentencing him to a thirty-six month probation term. We agree. N.C. Gen. Stat. § 15A-1343.2(d)(3) clearly mandates that where a felon is sentenced to community punishment, as was the case here, probation may not

be for more than thirty months, unless the trial court specifically finds that a longer term is required. N.C. Gen. Stat. § 15A-1343.2(d)(3) (2003). The trial court in this case made no such finding, thus it was error to make defendant's probation term exceed thirty months. As a result, we must remand this case for re-sentencing in order for the trial court to either impose a probation term consistent with the statute or to make the appropriate finding of fact that a longer probationary period is necessary. *See State v. Lambert*, 146 N.C. App. 360, 366, 553 S.E.2d 71, 76 (2001).

### B.

Defendant next contends the trial court abused its discretion in conditioning his probation on the payment of full restitution in the amount of $26,239.30 and in addition completing twenty-five hours of community service per week for the duration of defendant's probationary period, irrespective of defendant's ability to pay. Again, we agree.

N.C. Gen. Stat. § 14-107 expressly provides for restitution in a worthless check case where no active punishment is imposed.

In deciding to impose any sentence other than an active prison sentence, the sentencing judge shall consider and may require, in accordance with the provisions of G.S. 15A-1343, restitution to the victim for (i) the amount of the check or draft, (ii) any service charges imposed on the payee by a bank or depository for processing the dishonored check, and (iii) any processing fees imposed by the payee pursuant to G.S. 25-3-506, and each prosecuting witness (whether or not under subpoena) shall be entitled to a witness fee as provided by G.S. 7A-314 which shall be taxed as part of the cost and assessed to the defendant.

N.C. Gen. Stat. § 14-107(e). In ordering a defendant to pay restitution in a worthless check case, the trial court must do so in accordance with N.C. Gen. Stat. § 15A-1343, which provides for conditions of probation. *See id.*

Under Section 15A-1343, community service or reparations, *see* N.C. Gen. Stat. § 15A-1343(b1)(6) (2003), and restitution, *see* N.C. Gen. Stat. § 15A-1343(d), may be imposed as conditions of probation. N.C. Gen. Stat. § 15A-1343(d), furthermore, provides a procedure for the imposition of either restitution or reparation as a condition of probation.

(d) Restitution as a Condition of Probation.—As a condition of probation, a defendant may be required to make restitution or reparation to an aggrieved party or parties who shall be named by the court for the damage or loss caused by the defendant arising out of the offense or offenses committed by the defendant. When restitution or reparation is a condition imposed, the court shall take into consideration the factors set out in G.S. 15A-1340.35 and G.S. 15A-1340.36. As used herein, "reparation" shall include but not be limited to the performing of community services, volunteer work, or doing such other acts or things as shall aid the defendant in his rehabilitation. As used herein "aggrieved party" includes individuals, firms, corporations, associations, other organizations, and government agencies, whether federal, State or local, including the Crime Victims Compensation Fund established by G.S. 15B-23. A government agency may benefit by way of reparation even though the agency was not a party to the crime provided that when reparation is ordered, community service work shall be rendered only after approval has been granted by the owner or person in charge of the property or premises where the work will be done.

N.C. Gen. Stat. § 15A-1343(d). Thus, the statute clearly requires a trial court to use the same considerations in determining to impose either restitution or community service reparations as a condition of probation.

Among other things, N.C. Gen. Stat. § 15A-1340.36 requires a trial court, when imposing a restitution or reparation requirement on a defendant under Section 15A-1343(d), to consider factors including the defendant's resources, ability to earn, support obligations, and any other matters that pertain to the defendant's ability to pay. N.C. Gen. Stat. § 15A-1340.36(a) (2003). Furthermore, the amount of restitution "must be limited to that supported by the record . . . ." *Id.* Although the statute expressly does not require the trial court to make findings of fact or conclusions of law on the factors, *see id.*, the record in this case reveals that the trial court did not consider any of the factors related to defendant's ability to pay the full amount of restitution and thus this case must be remanded for a new sentencing hearing. *See State v. Smith*, 90 N.C. App. 161, 168, 368 S.E.2d 33, 38 (1988), *aff'd per curiam*, 323 N.C. 703, 374 S.E.2d 866 (1989) (remanded for new determination of restitution where the trial court failed to consider defendant's financial situation).

We further conclude that in imposing both restitution and community service conditions upon defendant's probation, the trial court also failed to consider defendant's ability to comply with both conditions simultaneously, as well as meeting his other obligations under the sentence of paying costs and fines. The conditions of probation in this case would require defendant to be gainfully employed at such a wage as to be able to provide for his family's support in addition to paying on average approximately $10,000.00 per year in restitution, fines, and costs. The imposition of twenty-five hours per week of community service over a three year period as another condition of probation may make it impossible for defendant to be gainfully employed to the extent required to make his restitution payments and support his family. *See id.* (trial court erred in imposing a restitution requirement as a condition of probation in such an amount that defendant "clearly [could not] comply"); *see also State v. Hayes,* 113 N.C. App. 172, 175, 437 S.E.2d 717, 719 (1993) (trial court erred in setting amount of restitution where common sense dictated defendant clearly would be unable to pay). Although the trial court asserted that, each week for three years, defendant could perform ten hours of community service on both Saturdays and Sundays, and then simply perform five more hours of service on other days while maintaining gainful employment, we do not believe this constitutes sufficient consideration of defendant's ability to make both restitution and reparation. On remand, the trial court, if it decides to impose both restitution and reparation requirements, shall take into consideration defendant's ability to comply with the community service requirement while maintaining gainful employment to the extent necessary to make restitution payments and support his family. *See* N.C. Gen. Stat. § 15A-1340.36(a).

On the facts of this case, ordering defendant to pay full restitution of over $26,000.00 in addition to performing twenty-five hours per week of community service for the entire probationary period, for a total of 3,600 hours, while remaining gainfully employed and paying $4,000.00 in fines plus $500.00 in costs, without considering the required statutory factors, pursuant to N.C. Gen. Stat. § 15A-1340.36 and N.C. Gen. Stat. § 14-107, was error. Because the trial court failed to take into consideration these statutory factors in imposing restitution and reparation and further sentenced defendant to a probationary period longer than thirty months without proper findings of fact, defendant is entitled to a new sentencing hearing.

No error at trial.

Remanded for a new sentencing hearing.

Judges McCULLOUGH and LEVINSON concur.