**STATE v. PHILLIPS**

[227 N.C. App. 416 (2013)]

STATE OF NORTH CAROLINA
v.
ANACIN WILLIAM PHILLIPS

No. COA12-852

Filed 21 May 2013

1. **Appeal and Error—preservation of issues—jury instruc-
tions—failure to object**

   Defendant's argument that the trial court erred in its jury
instructions by referring to the prosecuting witness as "the victim"
was reviewed for plain error where defendant failed to object and
properly preserve the issue for review.

2. **Assault—jury instructions—reference to witness as victim—
not expression of trial court's opinion**

   The trial court's use of the term "victim" to refer to the prosecut-
ing witness in the jury instructions for assault with a deadly weapon
with intent to kill was not an expression of the trial court's opinion
and defendant's argument to the contrary was overruled.

3. **Sentencing—prior record level—foreign conviction—not sub-
stantially similar to NC offense**

   The trial court erred in an assault with a deadly weapon with
intent to kill case by calculating defendant's prior record level and
sentencing him as having obtained a prior record level of IV for
felony sentencing purposes. The trial court erroneously determined
that the Ohio offense "Shoot with Intent to Kill" was substantially
similar to the North Carolina offense assault with a deadly weapon
with intent to kill.

4. **Costs—notice and opportunity to be heard—statutory
requirements met**

   The trial court did not err in an assault with a deadly weapon
inflicting serious injury case by failing to provide defendant notice
and an opportunity to be heard before imposing court costs upon
him. Considering statutory requirements that, absent a waiver, court
costs be assessed when an active sentence is imposed, the trial
court's order that court costs be assessed following the pronounce-
ment that defendant would serve an active sentence satisfied the
requirements that defendant be provided notice and an opportunity
to be heard on the imposition of those costs.

Appeal by defendant from judgment entered 29 September 2011 by Judge Arnold O. Jones, II, in Craven County Superior Court. Heard in the Court of Appeals 13 November 2012.

*Attorney General Roy Cooper, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Kevin P. Bradley for defendant-appellant.*

BRYANT, Judge.

Where the trial court's use of the term "victim" during the jury instructions did not prejudice defendant by improperly expressing an opinion before the jury, we find no error. Where the trial court erred by concluding that defendant's prior conviction in violation of a Ohio revised code section prohibiting "Intentional shooting, cutting, or stabbing," was substantially similar to the North Carolina offense "Felonious assault with deadly weapon with intent to kill or inflicting serious injury," and as a result attributing to defendant a prior record level IV for felony sentencing purposes, we reverse and remand. Where the record shows that defendant was afforded notice and an opportunity to be heard on the imposition of court costs, we find no error.

On 20 July 2009, defendant was indicted on charges of assault with a deadly weapon with intent to kill inflicting serious injury and kidnapping. Defendant was also indicted as both a violent habitual felon and habitual felon. A trial commenced during the 26 September 2011 session of Craven County Superior Court, the Honorable Arnold Jones, Judge presiding.

The State's evidence tended to show that in May 2009 defendant, sixty-four years old at the time of trial, and Diane[1], fifty-one years old, had been dating for almost a year. Diane spent as many as five nights a week with defendant at his residence located at 1031 Queen Street in New Bern. Emagene Broy and Albert Brown also lived at the residence.

On the evening of 6 May 2009, at approximately 8:00 p.m., Diane entered defendant's residence and then his bedroom. Diane testified that defendant usually returned home around 9:00 p.m., but on this night, he did not come home until close to midnight. When he entered the bedroom, Diane smelled a strong odor of alcohol and believed that

---

1. A pseudonym has been used to protect the identity of the victim.

defendant was impaired. Defendant sat near the foot of the bed and used a knife to cut a piece of cheese. Diane described the knife as a "hunting knife" having a black handle and a three to four inch blade. Defendant was muttering to himself. Diane testified that she said, "let me go to sleep. I don't want to hear that drunk BS."

Q.   . . . [W]hat did he say back to you at that time?

. . .

A.   He [] said "shut the hell up."

. . .

He was calling me a b\*\*ch and he got up and walked towards me with the knife in his hand . . . .

Diane testified that defendant sat down next to her, pinned her with his elbow, and proceeded to "beat me in my face. Just beat me and beat me. I was bleeding and bleeding, and he kept just beating me." Diane testified that before he released her, defendant used his knife to cut her clothes and rip them away from her body. When defendant moved to the far side of the bed, Diane jumped and ran to the bedroom door and out into the living room.

In the living room, Emagene Broy and Albert Brown were laying on separate couches watching television. Diane ran into the room without any clothes on; defendant followed her holding a knife. Diane begged defendant to "please stop. . . . [P]lease just let me get my clothes and go." Defendant told Broy and Brown that no one was to move or call the police. Brown noticed that Diane was bleeding from her hands. As Broy started to get up to retrieve a towel, defendant, while holding a knife and standing over Brown who was on the couch, said, "don't get the b-i-t-c (sic) nothing. She doesn't need nothing on. . . . I'm going to kill the b-i-t-c-h." "I'm going to kill you."

Diane ran from the house, but defendant caught her and pulled her back onto the front porch. There, defendant stabbed Diane in the chest. Diane ran off of the porch and through a nearby field until she collapsed. Brown called law enforcement officers, and a police officer found Diane lying naked in a pool of blood near a service drive to Craven Terrace apartments near Miller Street at 4:40 a.m.

Diane was admitted to the emergency department at Craven Regional Medical Center at 5:04 a.m. on 7 May 2009. Her blood pressure was "73 over 47." An emergency room nurse who treated Diane testified

that based on her blood pressure, Diane was "crashing" and "[had] a tendency to die at that particular time." An x-ray revealed that Diane suffered from a collapsed lung. A chest tube was inserted and approximately 510 milliliters of blood returned through the tube prompting hospital staff to give Diane approximately "320 cc's of blood" by transfusion. Once stabilized, Diane was transferred to the trauma unit at Pitt Memorial Hospital. At Pitt Memorial Hospital, Diane presented with multiple lacerations to her face, hand, and left chest, and a collapsed lung. She was treated and released four days later.

Defendant did not present any evidence.

The jury returned a guilty verdict on the charge of assault with a deadly weapon with intent to kill inflicting serious injury and not guilty on the charge of kidnapping. The State dismissed the charge of attaining habitual felon status, and the trial court dismissed the charge of attaining violent habitual felon status. Defendant was sentenced to a term of 133 to 169 months and ordered to pay court costs of $9,094.50. Defendant appeals.

---

On appeal, defendant raises the following issues: whether the trial court erred in (I) expressing an opinion about the evidence in front of the jury; (II) calculating defendant's prior record level; and (III) imposing court costs.

## I

Defendant argues that the trial court violated N.C. Gen. Stat. § 15A-1232 by expressing an opinion as to an issue of fact while instructing the jury. Specifically, defendant contends that the trial court committed error by referring to Diane as "the victim" when instructing the jury on the charge of assault with a deadly weapon with intent to kill inflicting serious injury. We disagree.

### Standard of Review

[1] We note that defendant failed to raise an objection to the jury instructions before the trial court but on appeal argues that the issue is preserved as a matter of law. Defendant cites *State v. Young*, 324 N.C. 489, 380 S.E.2d 94 (1989), and *State v. Duke*, 360 N.C. 110, 623 S.E.2d 11 (2005), for the proposition that this issue is properly preserved. However, both *Young* and *Duke* involve the trial court's comment regarding a defendant's confession, not a reference to the prosecuting witness as a victim. Further, defendant argues that our Supreme Court's opinion in

*State v. McCarroll*, 336 N.C. 559, 445 S.E.2d 18 (1994) (holding no error in trial court's reference to the prosecuting witness as the victim), was reviewed for plain error only "because of concession by the defendant-appellant in that case." We disagree.

On many occasions, our Court has applied plain error review to the issue defendant raises. *See e.g., State v. Carter,* ___ N.C. App. ___, 718 S.E.2d 687 (2011), *rev'd on other grounds,* ___ N.C. ___, 739 S.E.2d 548 (2013); *State v. Cabe,* 136 N.C. App. 510, 524 S.E.2d 828 (2000); *State v. Anthony,* 133 N.C. App. 573, 516 S.E.2d 195 (1999); and *State v. Richardson,* 112 N.C. App. 58, 434 S.E.2d 657 (1993). *See also, State v. Jackson,* 202 N.C. App. 564, 688 S.E.2d 766 (2010) (finding no plain error in the trial court's failure to intervene ex mero motu upon prosecutor's reference to the prosecuting witness as a "victim"). We are unable to find and defendant fails to point us to any cases in which this Court has reviewed this precise issue regarding the trial court's reference to the prosecuting witness as "the victim" for anything other than plain error where defendant failed to object and properly preserve the issue for review. Therefore, where our courts have repeatedly stated that the use of the word "victim" in jury instructions is not an expression of opinion, we will not allow defendant, after failing to object at trial, to bring forth this objection on appeal, couched as a statutory violation, and thereby obtain review as if the issue was preserved. Therefore, we review this issue for plain error.

## Analysis

**[2]** Pursuant to our General Statutes, section 15A-1232, "[i]n instructing the jury, the judge shall not express an opinion as to whether or not a fact has been proved and shall not be required to state, summarize or recapitulate the evidence, or to explain the application of the law to the evidence." N.C. Gen. Stat. § 15A-1232 (2011).

> Whether a trial court's comment constitutes an improper expression of opinion is determined by its probable meaning to the jury, not by the judge's motive. Furthermore, a totality of the circumstances test is utilized under which defendant has the burden of showing prejudice. Unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless.

*State v. Mucci,* 163 N.C. App. 615, 620, 594 S.E.2d 411, 415 (2004) (citations and quotations omitted).

Defendant cites *Richardson,* 112 N.C. App. 58, 434 S.E.2d 657, where the defendant was charged with first degree sexual offense, first degree rape, taking indecent liberties with a minor, and crime against nature. *Id.* at 60, 434 S.E.2d at 659. In instructing the jury, the trial court referred to the prosecuting witnesses as "victims" only in discussing the rape and sexual offense charges but not in respect to the charges of taking indecent liberties with a minor and crime against nature *Id.* at 67, 434 S.E.2d at 663. The jury returned guilty verdicts only on the charges of taking indecent liberties with a minor and crime against nature. The defendant argued on appeal that the trial court erred by referring to the prosecuting witnesses as "victims" during the jury charge. In overruling the defendant's argument, the *Richardson* Court noted that the jury found the defendant not guilty of those offenses for which the trial court referred to prosecuting witnesses as victims; therefore, the defendant could not establish prejudice.

In contrast to *Richardson,* defendant points to the trial court's use of the term "victim" repeatedly in the assault instruction – a crime for which he was convicted – and "person" in the kidnapping instruction — a charge of which he was acquitted. Defendant asserts that the trial court "effectively intimated judicial opinion [that he] was guilty of assault if not kidnapping." However, use of the term "victim" standing alone is not enough to warrant a new trial. Defendant has the burden of showing prejudice based on a totality of the circumstances. *Mucci,* 163 N.C. App. at 620, 594 S.E.2d at 415.

At trial, the State presented evidence that defendant was intoxicated when he returned to his residence. Defendant's girlfriend, Diane testified that in response to her statement "let me go to sleep. I don't want to hear that drunk BS[,]" defendant beat her about her face with the handle of a knife and then cut away all of the clothes from her body. Diane ran to a living room where Emagene Broy and Albert Brown were watching television. Broy and Brown testified that Diane ran into the room without clothes on, pleading for help and asking that someone call the police. Defendant came into the living room carrying a knife. Diane had no weapon, and she was bleeding from her hands. Defendant refused to let Brown or Broy get a towel for Diane or call the police. Instead, while standing over Brown holding a knife, defendant said, "don't get the b-i-t-c (sic) nothing. She doesn't need nothing on. . . . I'm going to kill the b-i-t-c-h." Diane attempted to talk to defendant but again, "He said, I'm going to kill you." Diane ran for the front door, onto the front porch, and down the steps. Defendant caught Diane at the base of the steps, pulled her back toward the house, and then stabbed her in the chest before

Diane could run away. Diane was found lying outdoors, naked, in a pool of blood. As a result of the beating and stabbing by defendant, Diane suffered lacerations to her face and hand, and suffered a puncture wound in her left chest which caused a collapsed lung. Because of the severity of her medical condition – Diane was "crashing" and "[had] a tendency to die at that particular time," Diane was transferred to Pitt Memorial Hospital where they offered "a higher level of care." There, she received treatment and was released four days later.

Considering the fact that our courts have on many occasions stated that the use of the term "victim" in jury instructions is not an expression of opinion, and considering the horrifying facts of the assault in the instant case, we can discern no prejudicial error as a result of the trial court's use of the word "victim" to identify the State's prosecuting witness during its jury instructions. *See id.* Accordingly, we overrule defendant's argument.

## II

**[3]** Defendant argues that the trial court erred in calculating his prior record level and sentencing him as a having obtained a prior record level of IV for felony sentencing purposes. Defendant contends that the trial court erred in concluding that his prior conviction in Ohio for violating Ohio Revised Code § 2901.23 (1969), "Intentional shooting, cutting, or stabbing," was substantially similar to the North Carolina crime of assault with a deadly weapon with intent to kill. Defendant further contends that because of this conclusion, the trial court erroneously assigned him four prior record level points causing him to be sentenced as having obtained a level IV prior record level rather than a level III. We agree.

Initially, we note the State's argument that defendant failed to raise this issue before the trial court and thus, may not raise it on appeal. However, "[i]t is not necessary that an objection be lodged at the sentencing hearing in order for a claim that the record evidence does not support the trial court's determination of a defendant's prior record level to be preserved for appellate review." *State v. Bohler,* 198 N.C. App. 631, 633, 681 S.E.2d 801, 804 (2009) (citing N.C. Gen. Stat. § 15A-1446(d)(18)[2])

---

2. Pursuant to North Carolina General Statutes, section 15A-1446(d)(18), "[e]rrors based upon any of the following grounds, which are asserted to have occurred, may be the subject of appellate review even though no objection, exception or motion has been made in the trial division. . . . (18) The sentence imposed was unauthorized at the time imposed, exceeded the maximum authorized by law, was illegally imposed, or is otherwise invalid as a matter of law." N.C. Gen. Stat. § 15A-1446(d)(18) (2011).

(citations omitted). "The determination of an offender's prior record level is a conclusion of law that is subject to de novo review on appeal." *Id.*

Pursuant to North Carolina General Statutes, section 15A-1340.14(a), "[t]he prior record level of a felony offender is determined by calculating the sum of the points assigned to each of the offender's prior convictions . . . ." N.C. Gen. Stat. § 15A-1340.14(a) (2011).

> Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony, or is classified as a Class 3 misdemeanor if the jurisdiction in which the offense occurred classifies the offense as a misdemeanor. If the offender proves by the preponderance of the evidence that an offense classified as a felony in the other jurisdiction is substantially similar to an offense that is a misdemeanor in North Carolina, the conviction is treated as that class of misdemeanor for assigning prior record level points. If the State proves by the preponderance of the evidence that an offense classified as either a misdemeanor or a felony in the other jurisdiction is substantially similar to an offense in North Carolina that is classified as a Class I felony or higher, the conviction is treated as that class of felony for assigning prior record level points.

N.C.G.S. § 15A-1340.14(e). While the statute provides that either the State or the defendant may prove that an offense for which the defendant was convicted in a foreign jurisdiction is substantially similar to a North Carolina offense, the statute does not give guidance as to how a trial court is to make such a determination. *See id.; see also, State v. Hanton,* 175 N.C. App. 250, 623 S.E.2d 600 (2006). "In light of such an ambiguity in a criminal statute, the rule of lenity requires us to interpret the statute in favor of defendant." *Hanton,* 175 N.C. App. at 259, 623 S.E.2d at 606 (citation omitted).

Here, the trial court found that defendant had two prior convictions: "Shoot with Intent to Kill;" and "Rape." Both convictions occurred

---

In *State v. Mumford,* 364 N.C. 394, 699 S.E.2d 911 (2010), our Supreme Court, in discussing the constitutionality of N.C.G.S. § 15A-1446(d)(18), concluded that "[t]his provision does not conflict with any specific provision in our appellate rules and operates as a 'rule or law' under Rule 10(a)(1) . . . ." *Id.* at 403, 699 S.E.2d at 917.

in Ohio. The trial court determined that the Ohio offense "Shoot with Intent to Kill" was substantially similar to that of the North Carolina offense assault with a deadly weapon with intent to kill, a class E felony. This class E felony under North Carolina law accounted for four of defendant's ten prior record level points. With ten prior record level points, defendant was sentenced as having obtained prior record level IV for felony sentencing purposes.

In making its determination that defendant's Ohio conviction of "Shoot with Intent to Kill" was substantially similar to the North Carolina offense assault with a deadly weapon with intent to kill, the trial court stated the following:

> I have [] reviewed the Ohio code, the definitions contained in that code, felonies. I have compared that to North Carolina statutes, and I do find that by a preponderance of the evidence the State has met their burden that the Ohio crime is substantially similar to our North Carolina Crime Class E classification of assault offered by the State, and therefore I will find prior sentencing points should be calculated as relates to these – this assault with a deadly weapon with intent to kill inflicting serious injury charge as . . . a prior E conviction.

In pertinent part, the record indicates that defendant was convicted of an offense in violation of Ohio R.C. § 2901.23. The State presented copies of section 2901.23 that the trial court accepted as being in effect at the time of defendant's offense on 24 December 1968. Pursuant to Ohio R.C. § 2901.23, entitled "Intentional shooting, cutting, or stabbing," "[n]o person shall maliciously shoot, stab, or shoot at another person with intent to kill, wound, or maim such person."

Pursuant to North Carolina General Statutes, section 14-32, entitled "Felonious assault with deadly weapon with intent to kill or inflicting serious injury; punishments[,]"

> (a) Any person who assaults another person with a deadly weapon with intent to kill and inflicts serious injury shall be punished as a Class C felon.

> (b) Any person who assaults another person with a deadly weapon and inflicts serious injury shall be punished as a Class E felon.

> (c) Any person who assaults another person with a deadly weapon with intent to kill shall be punished as a Class E felon.

N.C. Gen. Stat. § 14-32 (2011).

Defendant contends that because an offense in violation of Ohio R.C. § 2901.23 did not require an intent to kill or the infliction of an injury, while an offense in violation of N.C. Gen. Stat. § 14-32 requires either an intent to kill or infliction of serious injury, or both, R.C. § 2901.23 is not substantially similar to N.C.G.S. § 14-32. Considering the ambiguity within R.C. § 2901.23 and in accordance with the rule of lenity, we hold that R.C. § 2901.23 is not substantially similar to N.C.G.S. § 14-32. *See Hanton*, 175 N.C. App. at 259, 623 S.E.2d at 606.

Defendant further contends that, when viewed in the light most favorable to him, R.C. § 2901.23 is substantially similar to the North Carolina offense set out under N.C. Gen. Stat. § 14-33(c)(1), "Misdemeanor assaults, batteries, and affrays, simple and aggravated; punishments." Pursuant to N.C.G.S. § 14-33(c)(1), "any person who commits any assault, assault and battery, or affray is guilty of a Class A1 misdemeanor if, in the course of the assault, assault and battery, or affray, he or she: (1) Inflicts serious injury upon another person or uses a deadly weapon . . . ." N.C. Gen. Stat. § 14-33(c)(1) (2011). We agree.

Because we hold that in, when viewed the light most favorable to defendant, R.C. § 2901.23 is substantially similar to N.C. Gen. Stat. § 14-33(c)(1), an A1 misdemeanor with a prior felony record level value of one point, defendant's prior record level points for felony sentencing would be reduced from ten to seven points. *See* N.C. Gen. Stat. § 15A-1340.14(b)(5) (2011) ("For each prior misdemeanor conviction as defined in this subsection, 1 point. For purposes of this subsection, misdemeanor is defined as any Class A1 . . . nontraffic misdemeanor offense . . . ."). A prior felony record level totaling seven points corresponds to a level III for felony sentencing. *See* N.C.G.S. § 15A-1340.14(c)(3) ("The prior record levels for felony sentencing are . . . (3) Level III -- At least 6, but not more than 9 points.). Therefore, in sum, we hold that the trial court erred in concluding that Ohio R.C. § 2901.23 ("Intentional shooting, cutting, or stabbing"), as codified at the time of defendant's offense, was substantially similar to N.C.G.S. § 14-32 ("Felonious assault with deadly weapon with intent to kill or inflicting serious injury; punishments"), and assigning defendant the corresponding four prior record level points, and sentencing defendant as having obtained a prior record level IV. Accordingly, we reverse defendant's sentence and remand for sentencing proceedings in accordance with this opinion.

*III*

[4] Lastly, defendant argues that the trial court erred in failing to provide

notice and an opportunity to be heard before imposing upon defendant court costs of $9,094.50. We disagree.

Pursuant to North Carolina General Statutes, section 7A-304, "[i]n every criminal case in the superior or district court, wherein the defendant is convicted, or enters a plea of guilty or nolo contendere, or when costs are assessed against the prosecuting witness, the [] costs shall be assessed and collected." N.C. Gen. Stat. § 7A-304 (2011). "[A] defendant who receives an active sentence is [] required to be assessed court costs unless the trial court specifically makes a written finding of just cause to waive these costs." *State v. Patterson*, ___ N.C. App. ___, ___, 735 S.E.2d 602, 604 (2012) (citing 2011 N.C. Sess. Law 145 § 32.6).

In *State v. Webb*, 358 N.C. 92, 591 S.E.2d 505 (2004), our Supreme Court in discussing the constitutionality of a fee for appointed counsel imposed upon indigent defendants, stated the following:

> [a] convicted defendant is entitled to notice and an opportunity to be heard before a valid judgment for costs can be entered. Costs are imposed only at sentencing, so any convicted [] defendant is given notice of the appointment fee at the sentencing hearing and is also given an opportunity to be heard and object to the imposition of this cost.

*Id.* at 101-02, 591 S.E.2d at 513 (citation omitted).

Here, the trial court gave the following order,

> [The Court:]     [Defendant], I'm going to sentence you to a minimum term of 133 months, maximum of 169 months in the North Carolina Department of Corrections.
>
> Give you credit for any time that you have served relating to this sentence . . . .
>
> . . .
>
> Order that he pay the superior court cost.

While defendant challenges whether he was provided notice and an opportunity to be heard as to the imposition of court costs in the amount of $9,094.50, the judgment and commitment entered 29 September 2011 also reflects the imposition of attorney fees in the amount of $9,529.38 and miscellaneous fees of $60.00 for a total of $18,683.88. Defendant does not challenge the imposition of these fees. We note that following the trial court's order imposing court costs, defendant participated in a

discussion with the trial court regarding attorney fees and the number of hours his attorney had worked on his case.

> THE COURT: Lawyer spent about 120 hours on the case. Now, I'm not holding him to that exact amount. This case is over two years old, almost – it's two-and-a-half years old. Do you want to be heard as to that amount of time, [defendant], or you think that sounds about right? You've been working your lawyer a while I guess.

> DEFENDANT: Yes, your Honor. I think little bit more than the hours.

> THE COURT: You think he spent more time than that.

> DEFENDANT: Yes, sir.

> . . .

> THE COURT: I will consider your time and I note for the record the defendant believes that may have actually spent more time than what he's telling me on the record.

> And I'm going to award and order that those attorney fees be – and cost of court be made a civil judgment against [defendant].

Considering statutory requirements that, absent a waiver, court costs be assessed when an active sentence is imposed, the trial court's order that court costs be assessed following the pronouncement that defendant would serve an active sentence satisfies the requirements that defendant be provided notice and an opportunity to be heard on the imposition of those costs. *See* N.C.G.S. § 7A-304; *Webb*, 358 N.C. at 101-02, 591 S.E.2d at 513. Accordingly, defendant's argument is overruled.

No error in part; reversed in part.

Judges McGEE and ERVIN concur.